390 P.2d 854

**ZIONS FIRST NATIONAL BANK, N. A.,**
**Plaintiff and Respondent,**

v.

**Spencer C. TAYLOR, Bank Commissioner of**
**the State of Utah, and First Security State**
**Bank, Defendants and Appellants.**

**No. 9960.**

Supreme Court of Utah.

April 7, 1964.

A. Pratt Kesler, Atty. Gen., H. Wright Volker, Asst. Atty. Gen., Ray, Quinney & Nebeker, Salt Lake City, for defendants and appellants.

Marr, Wilkins & Cannon, J. Thomas Greene, Salt Lake City, for plaintiff and respondent.

CALLISTER, Justice.

Spencer C. Taylor, Utah State Bank Commissioner, and First Security State Bank appeal from a judgment of the lower

court vacating and setting aside an order of the Commissioner granting First Security's application to establish a branch bank at the "Cottonwood Mall," which is located in an unincorporated area of Salt Lake County. The court below concluded that the action of the Commissioner "was without foundation of fact, constituted an abuse of administrative discretion, was arbitrary and capricious, and was contrary to law in that the following statute was not sufficiently inquired into and followed." The statute referred to is that portion of Section 7–3–6, U.C.A. 1953, as amended, which provides:

"No branch shall be established at a location outside the corporate limits of a city or town in such close proximity to an established bank or branch as to unreasonably interfere with the business thereof."

The "Cottonwood Mall" is a new and unique type shopping center. It has an area of approximately 515,000 square feet and houses, under one roof, numerous business establishments. On February 1, 1960, Zions National Bank established a branch in the "Mall." This was done pursuant to authority granted it by the Comptroller of the Currency, United States Department of the Treasury. Being a national bank, Zions did not have to seek the approval of the State Bank Commissioner. On November 16, 1961, First Security filed its application for the proposed branch with the State Bank Commissioner, which was granted on October 16, 1962. The proposed branch of First Security would be about 182 feet, across the "Mall," from Zions' established branch.

The proposed branch would, as found by the lower court, be in "close proximity" to Zions' branch office. However, "close proximity" does not, in and of itself, prohibit the establishment of a branch. The "close proximity" must unreasonably interfere with the established bank or branch. The court below found that the Commissioner did not have substantial competent evidence before him upon which to base a determination that the "close proximity" of the proposed First Security branch would not unreasonably interfere with the business of the Zions branch.

It is the duty and prerogative of the Bank Commissioner to determine whether a branch bank application shall be granted or denied. He must decide if the establishment of a new branch would unreasonably interfere with the business of an existing bank or branch. The courts will not overrule his decision, if it is supported by any substantial evidence and is not arbitrary or capricious. In order to review properly the action of the Bank Commissioner, there must be an adequate record of the proceedings before him. The record in the instant case gives rise to several problems.

First Security's application was accompanied by a letter describing the shopping center, the area to be served, together with its population—present and projected. It also listed the existing banking facilities in and about the area and contained other data in support of the application. Zions then filed with the Commissioner a letter protesting the application and setting forth reasons why it should be denied. According to Zions, the area had adequate existing banking facilities, and it would not be to the public's convenience or advantage to grant the application. It was further pointed out that the proposed branch was prohibited by that portion of 7–3–6, U.C.A. 1953, heretofore quoted.

The Commissioner referred the matter to his chief examiner for investigation. The investigation was conducted and, some time in February of 1962, the examiner submitted a rather comprehensive report in which he recommended that First Security's application be denied. It was his opinion that there was no need in the area for an additional banking facility, and that the granting of the application would create an "overbanked condition." He did report, however, that the possible growth in the area might justify, some time in the future, another banking facility. Subsequently, 11 months after it had been filed, the Commissioner

granted the application and issued First Security a certificate.

■ No formal hearing was held, nor was one requested. It is true that the legislature saw fit in 1957 [1] to eliminate the mandatory requirement that public hearings be held. Regardless of the wisdom of the legislative change, we are of the opinion that a public hearing should be had in most, if not all, branch bank applications. This is particularly true where a protest has been filed and there is a possibility of a court review. Had such hearing been held in the instant case, there would probably be an adequate record for a court to review. As it is, the record contains only the application and letter of First Security, Zions' letter of protest, the report of the examiner, and a copy of the certificate. Furthermore, while we realize that it is appropriate and perhaps necessary for the Commissioner to make ex parte investigations to aid him in making his decision, the instant case is complicated by the fact that he did not prepare any written findings or reasons to support his action. The recitation in the certificate that First Security "has complied with all the provisions of Section 7–3–6" does not supply this deficiency.

Another aspect of this case gives us great concern. After it had commenced this action in the lower court, Zions took, without

---

1. Laws of Utah 1957, Ch. 7. Subsequently, the legislature amended the section again and provided for public hearings at the discretion of the bank commissioner. Laws of Utah 1963, Ch. 7, § 8.

any objection, the deposition of the Commissioner. He was questioned at length regarding the procedures he followed in arriving at the conclusion that the application be granted. He was asked questions which, in effect, attempted to elicit his reasons. It was an attempt to prove that the Commissioner had not given proper consideration to the application and the adverse effect its granting would have upon Zions. Possibly Zions thought the deposition necessary because of the inadequacy of the record. This deposition was opened and published, without objection (in fact by stipulation), and considered by the trial court in reaching its decision.

Inasmuch as this matter is to be remanded to the Commissioner, we deem it appropriate to give our views concerning the deposition. It should never have been taken in the first place, even without objection, and, secondly, it would not be a proper basis upon which to evaluate the action of the Commissioner. The Bank Commissioner, in passing upon branch bank applications, acts in a quasi-judicial capacity. In Morgan v. United States, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), a federal district court authorized the taking of the Secretary of Agriculture's deposition. The Secretary was questioned regarding the process by which he had reached the conclusions of his order. The inquiry covered the manner and extent of his study of the record, his consultations with subordinates, and, as in the instant case, his disregard of a memo from an official in the department who opposed the Secretary's action. Justice Frankfurther, in denouncing the procedure, stated:

"But the short of the business is that the Secretary should never have been subjected to this examination. The proceeding before the Secretary 'has a quality resembling that of a judicial proceeding'. * * * Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this very litigation that 'it was not the function of the court to probe the mental processes of the Secretary'. * * * Just as a judge cannot be subjected to such a scrutiny, * * * so the integrity of the administrative process must be equally respected. * * *"

For the reasons stated, we affirm the lower court's judgment setting aside the order granting First Security the branch bank, but remand the application to the Bank Commissioner for proceedings in accordance with the views expressed herein. No costs awarded.

HENRIOD, C. J., and McDONOUGH, CROCKETT, and WADE, JJ., concur.