461 P.2d 730

**WALKER BANK & TRUST COMPANY, a Utah corporation, Plaintiff and Respondent,**

v.

**W. S. BRIMHALL, Commissioner of Financial Institutions of the State of Utah, Bank of Utah, Bank of Ben Lomond, Citizens National Bank, First Security Bank of Utah, N. A., and Commercial Security Bank, Defendants and Appellants.**

No. 11628.

Supreme Court of Utah.

Nov. 20, 1969.

Vernon B. Romney, Atty. Gen., H. Wright Volker, Asst. Atty. Gen., Salt Lake City, David S. Kunz, Neil R. Olmstead, Max D. Lamph, Ogden, Don B. Allen, Salt Lake City, for appellants.

H. R. Waldo, Jr., of Jones, Waldo, Holbrook & McDonough, Salt Lake City, for respondent.

HENRIOD, Justice:

Review [1] of a declaratory judgment, which 1) set aside the Commissioner's denial of Walker's application to establish a branch bank in South Ogden, and which 2) *ordered* the Commissioner to *grant* the application. Affirmed in part and reversed in part, with instructions. No costs awarded.

Walker's main office is at Salt Lake City, and County, Utah. The proposed branch would be situate in South Ogden, Weber County. Ogden City has about 75,-000 people, and South Ogden has about 7,-500. Both are municipalities. Ogden has "unit" or established banks. South Ogden has no unit banks but there are "branch" banks (agencies of unit banks) in both Ogden and South Ogden. Under the statute,[2] except for cities of the first class, (the only one in Utah being Salt Lake City) no branch may be established if there is an existing "unit" bank, with a possible exception not pertinent here. There is none in South Ogden. Hence (and it is conceded by both sides) a branch bank *can be established* in South Ogden, if, among other things, certain statutory requirements are met. Such requirements generally are 1) adequate capitalization, 2) designation of place of proposed business and 3) proof *to*

*the satisfaction of the Commissioner* that the proposed branch will serve the public convenience and advantage.

It appears that everyone agrees that 1) and 2) above are extant here. No. 3) seems to be the nub, involving the factor of discretion in the Commission. "To the satisfaction of the Commissioner" is something akin to "the satisfaction of a trial court, a poser to this court that more than once has resulted in either an approval or a reversal. No matter how satisfied a Commissioner or a trial judge may be, such satisfaction may not be satisfactory on appeal. Counsel appeal cases on that assumption. This is such a case.

Appellants urged that the Commissioner's ruling is unrealistic and not in harmony with the spirit of the statute in this case. Walker proposed to put its branch on the South side of a street that is the boundary between Ogden and South Ogden. It could not establish a branch just a few feet north on the other side of the street, a fact that Walker concedes. Also it is conceded that the application was filed, not primarily or hardly at all, to serve the inhabitants of South Ogden,—but to serve inhabitants to the north and across the street.[3] Any fair-minded person might conclude that such

1. Under Title 7–1–26(4), Utah Code Annotated 1953, as amended. (See Vol. 1, 1969, Pocket Supplement, pp. 279–80.)
2. Title 7–3–6, Utah Code Annotated 1953, as amended. (See Vol. 1, 1969, Pocket Supplement, p. 282, et seq.).

3. An official of Walker frankly conceded this by asserting that it would be as advisable to have its branch on Antelope Island in the middle of Great Salt Lake if it were restricted to serving South Ogden inhabitants only.

procedure appears to be an attempt to do indirectly that which could be not done directly. The answer is that the act does not interdict such a result. Although appellants urge that the application should be restricted to the political geographic area in which the branch is proposed to be located, the legislation does not share such conclusion. Nonetheless, it seems to us that geography, in a given case, could be some sort of a factor contributing to "public convenience and advantage" established "to the satisfaction" of the Commissioner, but there is nothing in the act making such factor conclusive, compelling or otherwise binding unless such factor fairly weighed, along with others, clearly would load the scales in a fashion reflecting caprice on the part of the Commissioner, in the opinion of the reviewing court.

■ The appellants filed an answer in which a defense was asserted that the facts did not support the conclusion of the Commissioner that public convenience and advantage would be served by establishment of the branch. Walker countered with a motion to dismiss such defense for the reason it was "an improper and insufficient defense and immaterial to the determination" of the matter. This motion was granted. All that was left was the order of the Commissioner based solely on the advice of the Attorney General, and a review of the evidence and a decision based thereon effectively were eliminated by the granting of the motion to dismiss. The court then granted summary judgment in favor of Walker and declared that the Commissioner's denial of the application based on his adherence to the Attorney General's opinion, was in error as a matter of law. We can and do affirm the trial court's action in this respect since the Attorney General's opinion was based strictly on the geographical factor.

■ The trial court, in ordering the Commissioner to grant the application, was in error, however, since, by eliminating a review of the facts by granting the motion to dismiss a defense based thereon, he could not then inconsistently require the Commissioner to grant the application which necessarily was dependent upon the excluded facts. Having exercised a restricted power to set aside the ruling or order of the Commissioner, it then would be either an invasion of the executive department's prerogative, or a departure from legislative sanctions anent the authority of the Commissioner, for the court to order the Commissioner to grant the application.

It seems that the legislature generally has intended to restrict the power of courts, on review, to an approval or disapproval of an administrative official's judgment. Although the wording of 7–1–26(4), U.C.A. 1953, having to do with judicial review under our Banks and Banking legislation, is not identical to that of Public Utilities leg-

islation,[4] or that under our Workmen's Compensation Act,[5] it seems rather obvious that the statute restricts the reviewing court, requiring it to approve or set aside the order or judgment of the Commissioner as is the case with the other administrative agencies mentioned.[6] We so conclude. Doing so, we remand the case to the trial court. The trial court has already *set aside* the Commissioner's order, which decision we affirm as above stated, and reverse the trial court's judgment ordering the Commissioner to grant the application.

The Bank Commissioner will have to take it from there.

CALLISTER and TUCKETT, JJ., concur.

ELLETT, Justice (concurring and dissenting).

I concur in that part of the prevailing opinion which holds that a branch bank can be established in South Ogden but dissent from the holding that the trial court should remand the matter to the Commissioner for a determination which he has already made.

Section 7-1-26, U.C.A.1953 (1969 Pocket Supp.), provides:

The bank commissioner shall have discretionary power in the approval of articles of incorporation of institutions subject to the supervision of the banking department and applications for licenses to transact in this state any business subject to such supervision, *and may refuse to grant his approval when the plan of operation does not comply with the laws of this state governing such institution or business, or with accepted and prevailing practices, or when the incorporators or organizers or any of them shall not be of such character, responsibility and general fitness as to warrant the belief that the business will be honestly conducted in accordance with law and for the best interests of the members, customers and depositors of the institution, or when the location or field of operation of the proposed business shall be in such close proximity to an established business subject to this title that such established business might be unreasonably interfered with and the support of the new business would be such as to make improbable its success, or when other good and sufficient reasons exist for such refusal.* (Emphasis added.)

---

4. Title 54–7–16, U.C.A.1953, where the decision on review is restricted to "either affirming or setting aside the order or decision of the commission."
5. Title 35–1–85, U.C.A.1953, where, on review the court is confined to entering judgment either "affirming or setting aside the award."
6. See Mountain State Tel. & Tel. Co. v. Public Service Comm., 107 Utah 502, 155 P.2d 184 (1945); Salt Lake Transfer Co. v. Public Service Comm., 11 Utah 2d 121, 355 P.2d 706 (1960).

It is thus seen that the Commissioner may *refuse* to grant applications for licenses, etc., under the stated conditions emphasized above. His findings in this matter were:

1. Walker Bank has the necessary capital to maintain the branch.

2. It would not unreasonably interfere with the operations of existing banks nor jeopardize the depositors thereof for the branch to be established.

3. It would not interfere with the ability of existing banks to maintain their financial strength, nor would it impair their ability to compete with the proposed branch.

4. The public convenience and advantage would be subserved by the establishment of the branch, and there is no reason to limit the character of work or services to be performed at such branch.

In connection with this matter, the Commissioner sought the advice of the Attorney General of Utah as to whether a branch bank could lawfully be permitted in South Ogden. The opinion given prompted the Commissioner to conclude as follows:

The Attorney General of the State of Utah in an opinion of law to the Commissioner dated August 15, 1968 (No. 68–055), a copy of which is attached hereto, has ruled that as a matter of law a branch bank may not be established by the applicant bank at the location proposed and the Commissioner deems it proper to follow such opinion and, accordingly, deny the application on the basis of the ruling of law set forth in the Attorney General's opinion.

It thus seems obvious to me that the findings of the Commissioner would require him to issue the license for a branch bank as requested notwithstanding the advice of the Attorney General and that it would be an abuse of discretion for him to refuse to do so, since there is no longer any legal reason to refuse it.

The main opinion speaks of an invasion by the court of the executive department's prerogative as if that prerogative were an absolute one. The statute above cited does not give the Commissioner any prerogative to grant or to withhold at his mere whim or pleasure. If it were intended to do so, there would be small comfort to one who asks for a judicial review. If all the court could do would be to set aside an order denying an application to which entitlement had been established, it would leave the applicant without a license and in exactly the same position that he was in before he appealed to the court for redress.

Our statute further provides that an applicant for a permit to establish a branch bank and any protestant thereto who feels aggrieved by the ruling of the Bank Commissioner is entitled to a "judicial review thereof by filing * * * any applicable form of action (including actions for de-

claratory judgment or writs of prohibitory or mandatory injunction), in the district court. * * *"[1]

The respondent herein did file its suit for a declaratory judgment and for a mandatory injunction. The trial court properly granted the summary judgment and with equal propriety performed its judicial duty pursuant to the prayer for a mandatory injunction by ordering the Commissioner to do his duty.

In my opinion it would be a surrender of our constitutional authority and a retreat from our judicial duty to hold that the courts of this state are as impotent in granting relief as the prevailing opinion says they are. However, we should ever be zealous in maintaining the constitutional division of power between the executive, the legislative, and the judicial branches of government. As custodians of the judiciary we owe a duty to see to it that the constitutional power of the *courts* is not infringed upon. This right should not be maintained because of any desire to enhance our authority at the expense of the other branches of government, but rather because of the peculiar function of the judiciary to stand always as a bulwark and a sanctuary where the citizen may come to have a just and proper decision made on his complaints. We must not turn a listening ear to his evidence and then say to him, "Your cause is just, but we are powerless to rectify your wrongs."

The statute does not provide that the Commissioner must be satisfied in a subjective manner. His discretion is to be governed by an objective standard if our institutions are to be established pursuant to law and not by the caprice of man. All courts in the land hold that a matter to be performed to the satisfaction of a person which does not involve the personal taste, fancy, or sensibility of the other party must be determined by objective standards.

In the case of Haymore v. Levinson, 8 Utah 2d 66, 328 P.2d 307 (1958), involving a building contract, Mr. Justice Crockett stated the law correctly in saying:

Building contracts, such as the one in question generally fall within the second class of contracts above discussed. In regard to them it is plain to be seen that giving the word "satisfactory" an entirely subjective meaning, might produce unconscionable results. The favored party could, upon any whim or caprice, and without reason, refuse to acknowledge satisfaction and thereby escape his obligations under the contract. The ends of justice are obviously better served by the application of the objective standard which only requires the work to be completed in a reasonably skillful and workmanlike manner in accordance with the

[1]. Section 7-1-26, U.C.A.1953 (1969 Pocket Supp.).

accepted standards in the locality. If, in the light of such standards, it would meet the approval of reasonable and prudent persons, that should be sufficient.

The language used seems applicable to this case, even if we assume that the Commissioner had to be *satisfied*. In fact, from the findings and conclusions above set out it seems evident that he *was* satisfied and would have granted the permit to operate the branch bank had it not been for the advice given which he concluded bound him as a matter of law.

Further litigation is not called for, and this matter should be put at rest. I think that the judgment of the trial court should be affirmed in toto.

CROCKETT, C. J., concurs in the opinion of ELLETT, J.