**SANDY STATE BANK, a Utah banking corporation, Plaintiff and Appellant,**

v.

**W. S. BRIMHALL, Utah State Commissioner of Financial Institutions, Mirvin D. Borthick, Successor in Office to W. S. Brimhall, and Draper Bank and Trust Company, a Utah corporation, Defendants and Respondents.**

No. 17322.

Supreme Court of Utah.

Sept. 16, 1981.

Larry G. Reed, Salt Lake City, for plaintiff and appellant.

David L. Wilkinson, William G. Gibbs, Dwight L. King, Salt Lake City, for defendants and respondents.

HALL, Chief Justice:

Plaintiff Sandy State Bank challenges the judgment of the district court which affirmed the order of the Commissioner of Financial Institutions granting the application of defendant Draper Bank and Trust Company (hereinafter "Draper Bank") to open a branch bank.

Three points are raised on appeal: 1) that the location of the approved branch bank violates the geographical limitations imposed by statute;[1] 2) that the Commissioner's decision is unsupported by the evidence; and 3) that the introduction of hearsay evidence constituted a denial of due process.

Sandy State Bank and Draper Bank are both duly organized Utah bank corporations. Sandy State Bank operates and maintains a unit bank within the corporate limits of Sandy City, a city of the second class, at 140 West 90th South Street. The site of Draper Bank's approved branch bank lies some eight blocks away, at approximately 90th South and 7th East Streets, but in an unincorporated area of Salt Lake County, completely surrounded by the incorporated area of Sandy City.

The Commissioner conducted a public hearing[2] on Draper Bank's application, and at the conclusion thereof the application was granted. Sandy State Bank sought judicial review in the district court by way of a declaratory judgment action.[3] The district court reviewed the record, determined that the decision of the Commissioner was not arbitrary, capricious, nor an abuse of discretion or otherwise not in accordance with law,[4] and thus affirmed the order. This appeal followed.

The evidence presented to the Commissioner was not materially in dispute. The principal witness for Draper Bank was its president, Dewey C. Bluth. He had been a resident of Sandy, Utah, for 18 years and president of the bank for 16 years. Draper Bank's main office is located in Draper, Utah, approximately 6 miles from Sandy City. Bluth had made a geographical study of all of the bank's customers which revealed approximately 58% of them lived within a 3-mile radius of 90th South and 7th East.

Customers of the bank complained about the inconvenience of its main bank, and that was a factor in making the application for the branch bank.

Bluth had been the mayor of Sandy for 4 years and was familiar with the people in the area. In addition to the concentration of bank customers, Bluth testified that Sandy was growing rapidly, much more rapidly than any place in the State of Utah.

---

1. U.C.A., 1953, 7–3–6.

2. Discretionary with the Commissioner, pursuant to U.C.A., 1953, 7–3–6.

3. Pursuant to the provisions of U.C.A., 1953, 7–1–26(4).

4. *Id.*; see also, *Walker Bank & Trust Company v. Brimhall*, 23 Utah 2d 264, 461 P.2d 730 (1969).

There were 32 subdivisions in Sandy and 18 pending subdivisions when Bluth left office as mayor. There are now 44 subdivisions with 1,450 homes under construction and 52 subdivisions pending. This information came from the public records of Sandy City Planning and Zoning Department. There had been no overall economic surveys or studies made of the area.

The location of the branch was to be on an 8-acre "island" surrounded by Sandy City. The map showed that there are many major islands in Sandy City and that the particular island was chosen because of the concentrated number of bank customers in the vicinity.

Bluth was subjected to cross-examination by counsel for plaintiff, which revealed that the basic information he testified about was acquired from his experience as mayor of Sandy for 4 years and from discussions with the present city manager of Sandy. Bluth testified that he personally observed the commercial developments in the city. The information he related concerning the growth of the Sandy area was undisputed by any testimony.

In addition to his practical experience as bank president and mayor, Bluth had graduated in political science from Brigham Young University in 1950, was a student of economics, and had participated in independent studies of the economic conditions and projected economic growth of Sandy City geographical area.

Bluth had spent considerable time with Sandy City officials and with the planning department. A year prior to the hearing, he participated in the planning and zoning department of Sandy City's construction of the map presented to the Commissioner for examination. The study analyzed and projected the growth in the various areas of Sandy City.

Bluth further testified that in the 8½ blocks separating the location of Sandy State Bank and the proposed Draper Bank, there were a number of businesses: Butterfield Ford Motor, Big City Electric, Big O Tires, K–Mart, Treacher's, Dee's, and a proposed shopping center.

Bluth's term as mayor of Sandy ended on January 1, 1978. The city grew from 8,000 people to 42,000 people in the 4-year period that he was mayor. Since January 1, 1978, the growth of the city has accelerated and he projected 140,000 people within a 10-year period of time. At the time of the hearing, the population in the Sandy area was 70,-000.

Bluth testified that his opinion coincided with that of American Bankers Magazine, a trade publication for bankers, that the average bank required a minimum of 5,000 people to support it. He further testified that it was his practice to keep abreast of the developments in the banking business, to study economic developments on a daily basis, analyzing the possibilities of profitable investments, and that as president of the bank, he was concerned about the profitability in the area of banking business. He was also of the opinion that the economic growth in the area would support the 6 bank applications previously approved by the Commissioner, plus the proposed Draper Bank branch, and that the 70,000 people in the area would support an additional 2 or 3 branch banks.

Bluth testified that he had taken into account, in forming his opinion, average earnings and income of the people in the area. Much of the information was based on his own personal observations. He had direct knowledge of the traffic because he had been mayor. His opinions were based on observations that he had made personally.

Ron Carnago, President of Sandy State Bank, indicated deposits in his bank after 15 months of operation were $7,000,000 or approximately $500,000 per month, that his bank had had adequate growth and was operating in the black, that he had 2,600 depositors and 1,500 checking accounts. It was stipulated that Carnago's opinion as the president of a bank and a banker was relevant. Carnago indicated he was satisfied with the progress of Sandy State Bank and that it was successful and profitable.

Two additional witnesses testified in behalf of Sandy State Bank. Raymond E. Johnson holds an MBA degree from the University of Utah, with a Ph.D degree in finance from the University of Wisconsin. Mr. Johnson was Associate Dean of the University of Utah College of Business. He testified that, in his opinion, growth trends in such areas as family income, retail sales, land patterns, and housing must be considered. It was his opinion that there was not sufficient information supplied to determine the growth trend of the Sandy City area.

The studies Johnson had made verified the fact that the population was increasing very rapidly, that the area was stronger economically than most areas of Salt Lake County, and that retail sales figures in the area were advancing rapidly. The witness did not desire to answer a question concerning land use as the information he had was inadequate. He explained at length the rationale that he followed in arriving at opinions relating to bank feasibility. The witness admitted that he was not as familiar with the area at 7th East and 90th South as were Mr. Carnago and Mr. Bluth and had no opinion as to whether the 5,000 persons figure to support a branch bank was reasonable.

Ray Sargent also testified as an expert on behalf of Sandy State Bank. He had 17 years as an economist with the Utah Department of Employment Security and his primary responsibility was to develop employment and unemployment analyses of the labor market conditions in the State of Utah and its counties. He testified that population trends over a period of time, historical and projected, would be a factor taken into consideration in evaluating economic growth trends. Residential versus commercial industrial construction activities in the area and evaluation of commercial growth through looking at levels of retail sales would be important. He thought traffic patterns in the area, utility hookups and evidence of increased residential or commercial growth were matters to be evaluated. Assessed valuations over a period of time would be considered in determining economic growth trends. When asked to evaluate Mr. Bluth's opinion, he candidly admitted that he had not previously been associated with bank operations. However, he was of the opinion that from the data presented, he could not make a comprehensive evaluation of growth trends.

At the conclusion of the hearing, the Commissioner granted the application of Draper Bank, supporting his decision by findings of fact that read in pertinent part as follows:

5. Draper Bank and Trust Company, as of September 30, 1978 held resources in the amount of $18,492,000, deposits in the amount of $17,191,000, and loans in the amount of $14,281,000. Total equity capital was $1,221,000 and reserves for loan losses were $151,000. The experience, skill and integrity of the management of Draper Bank and Trust are of high caliber and the bank is being operated successfully.

\* \* \* \* \* \*

9. The location of the proposed branch bank of Draper Bank and Trust Company is not in such close proximity to the existing bank of Sandy State Bank or any other established banking business so as to interfere unreasonably with said business.

10. The proposed branch office of Draper Bank and Trust Company is in a vicinity where there has occurred very rapid and extensive growth in both business and population.

11. The area between the location of the proposed branch and Sandy State Bank, it is anticipated, will be in part occupied by an extensive shopping and office complex, contemplated by F. C. Stangl and on which there is anticipated eight national leases will be established. Population projections are that Sandy City will increase from approximately 70,000 population to 140,000 population within ten years.

12. The location of the proposed branch office at 700 East 9000 South is convenient to the residential area and business

development and is located in the most rapidly growing residential area in the southeastern portion of Salt Lake County. The location is convenient to the customers of Draper Bank and Trust Company and will provide a needed service for the bank's present clientele. It is anticipated that the major development in the primary service area will be residential, but in addition there will be substantial business operations located in the primary service area which will provide adequate commercial base for both the present existing banking facilities of Sandy State Bank and the branch bank of Draper Bank and Trust Company, as well as other banking facilities which are contemplated in the unincorporated area of Salt Lake County.

13. Deposit insurance for the proposed branch bank would be obtained prior to the opening of the banking facility.

■ In support of its first point on appeal, Sandy State Bank contends that the establishment of a branch bank on the site as approved by the Commissioner is prohibited by the provisions of U.C.A., 1953, 7-3-6, which read in pertinent part as follows:

Except in cities of the first class, or within unincorporated areas of a county in which a city of the first class is located, *no branch bank shall be established in any city or town in which is located a bank* or banks, state or national, regularly transacting a customary bank business . . . . [Emphasis added.]

The argument advanced is that, although the approved bank site lies within the unincorporated area of Salt Lake County, it is nevertheless surrounded by Sandy City and therefore should be considered as being "in" Sandy City so as not to "subvert the intent of the legislature." We do not so interpret the statute. In the absence of any stated legislative intent, and in the absence of a showing of what, if any, legislative intent has been violated, we resort to a simple, literal reading of the statute and thus find no support for the position urged by Sandy State Bank that the proposed bank site is "in" Sandy City.[5]

The remaining points on appeal challenge the sufficiency of the evidence; therefore, we will address them together. The contentions are that: Draper Bank failed to bear the burden of proof; Dewey C. Bluth lacked standing as an expert witness; and Bluth's testimony was substantially based upon hearsay, and thus constituted a denial of due process.

The Commissioner's power to approve an application for a bank is governed by statute,[6] the basic requirements for approval being that:

(1) the applicant possess the necessary capital;

(2) it is shown to the satisfaction of the bank Commissioner that the public convenience and advantage will be subserved and promoted by the establishment of such branch; and

(3) the proposed bank is not in such close proximity to an established bank or branch as to unreasonably interfere with the business thereof.

The scope of judicial review of the Commissioner's decisions is also governed by statute[7] which reads in pertinent part as follows:

The reviewing court shall have power to hold unlawful and set aside any act, decision or ruling of the bank commissioner found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

■ The time-honored standard of appellate review of administrative decisions is that they are not vulnerable to attack if supported by substantial evidence and are not arbitrary and capricious. In *Zions First*

---

5. U.C.A., 1953, 7-3-6 has since been repealed; present Section 7-1-704 provides for the licensing of branch banks and places no restriction on the size or class of city in which a branch may be established.

6. Note 1, *supra.*

7. U.C.A., 1953, 7-1-26.

*National Bank v. Taylor*,[8] this Court interpreted the statutory powers of the Commissioner, and in doing so applied the general standard of review, stating it to be as follows:

It is the duty and prerogative of the Bank Commissioner to determine whether a branch bank application shall be granted or denied. He must decide if the establishment of a new branch would unreasonably interfere with the business of an existing bank or branch. The courts will not overrule his decision, if it is supported by any substantial evidence and is not arbitrary or capricious.

■ It lies within the sound discretion of the trial court to determine whether a proffered witness qualifies as an expert.[9] In *Maltby v. Cox Construction Company, Inc.*,[10] that rule was aptly stated as follows: It is largely within the discretion of the trial judge to pass on the qualifications of a witness as to whether he can give sound and reliable help to the jury with regard to subjects within his expertise. The knowledge of such a witness may have been acquired through formal education and study, but may also have been acquired through experience. The rulings of the District Court on the admissibility of such testimony are not lightly disturbed on appeal, nor at all, unless it clearly appears that the judge was in error. Here, the witness was qualified through experience to testify with regard to this issue, and the Court did not abuse its discretion in that respect. [Citations omitted.]

■ This Court has long recognized the considerable differences that exist between court trials and proceedings before administrative agencies, and that the technical rules of evidence need not be applied in the latter.[11] The Court has also held that hearsay evidence is admissible in proceedings before the Industrial Commission and the Public Service Commission.[12] However, a finding of fact cannot be based solely on hearsay evidence, but must be "supported by a residuum of legal evidence competent in a court of law."[13] No sound reason appears why the same rule should not be applicable to proceedings before the bank Commissioner.

■ Applying the foregoing principles of law to the facts of this case, we conclude that the record contains substantial evidence to support the findings of the Commissioner sustained by the trial court that substantial economic growth in the area warrants an additional bank; that the establishment of the proposed bank will not unreasonably interfere with existing or currently proposed and approved banks; and that the public convenience would be subserved by the establishment of the bank.[14]

■ We further conclude that the record supports the Commissioner's acceptance of the testimony of Dewey C. Bluth and that he did not abuse his discretion in qualifying him as an expert.

■ Finally, notwithstanding the fact that certain hearsay testimony was presented in the proceedings before the Commissioner, the record reveals that his findings of fact are amply supported by a residuum of evidence competent in a court of law, and we therefore decline to disturb his decision.

Affirmed. No costs awarded.

8. 15 Utah 2d 239, 390 P.2d 854 (1964).

9. See Rule 56, Utah Rules of Evidence.

10. Utah, 598 P.2d 336 (1979); see also, *State v. Fort*, Utah, 572 P.2d 1387 (1977); *Weber Basin Water Conservancy District v. Nelson*, 11 Utah 2d 253, 358 P.2d 81 (1960); *Webb v. Olin Mathieson Chemical Corporation*, 9 Utah 2d 275, 342 P.2d 1094 (1959).

11. *Lake Shore Motor Coach Lines, Inc. v. Welling*, 9 Utah 2d 114, 339 P.2d 1011 (1959).

12. *Id.*

13. *Ogden Iron Works v. Industrial Commission*, 102 Utah 492, 132 P.2d 376 (1942); see also, *Hackford v. Industrial Commission*, 11 Utah 2d 312, 358 P.2d 899 (1961).

14. *Bountiful State Bank v. Brimhall*, 24 Utah 2d 254, 469 P.2d 1022 (1970).

STEWART, HOWE and OAKS, JJ., concur.

MAUGHAN, J., heard the arguments, but died before the opinion was filed.