**Jack R. KEHL, Plaintiff and Respondent,**

v.

**Fred C. SCHWENDIMAN, Chief Drivers' License Services, Department of Public Safety, State of Utah, Defendant and Appellant.**

**No. 860010–CA.**

Court of Appeals of Utah.

April 16, 1987.

---

David L. Wilkinson, State Atty. Gen., Stephen G. Schwendiman, Div. Chief, Bruce M. Hale, Asst. Atty. Gen., for defendant and appellant.

J. Franklin Allred, Salt Lake City, for plaintiff and respondent.

Before GARFF, JACKSON and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

The Department of Public Safety ("the Department") appeals the district court's order reversing an administrative suspension of Jack R. Kehl's ("Kehl's") driver's license. We hold the "residuum rule" applies to per se license suspension hearings and the administrative order to suspend Kehl's license was not supported by a residuum of competent legal evidence. We therefore affirm the district court's order reinstating Kehl's license.

On August 12, 1983, Kehl was arrested for driving under the influence of alcohol. Utah Code Ann. § 41–6–44 (1983). Pursuant to Utah Code Ann. § 41–2–19.6 (1983), a per se pre-suspension hearing was held on September 6, 1983 before a hearing examiner of the Office of Drivers' License Services. Neither the arresting officer nor the operator of the breathalyzer testified. The only evidence admitted at the per se hearing was the arresting officer's sworn DUI Report, a copy of the operational checklist for the breathalyzer equipment, and the breathalyzer test result. Based upon this evidence, the hearing examiner suspended Kehl's driver's license for the maximum ninety days for a first offense under Utah Code Ann. § 41–2–19.6 (1983).

Kehl appealed the examiner's order of suspension. The district court, relying on the "residuum rule," found the examiner's order of suspension "arbitrary and capricious" and reinstated Kehl's license, but not until his license had been suspended for the entire ninety-day period.

■ Even though this controversy is technically moot as to Kehl, this case presents an issue that affects the public interest, is likely to recur, and because of the brief time anyone is affected, is capable of evading review. We therefore accept jurisdiction. *Wickham v. Fisher*, 629 P.2d 896 (Utah 1981); *see also Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969).

## I.

■ On appeal the Department argues that the "residuum rule" should not apply to per se drivers' license revocation hearings or, alternatively, that there was sufficient competent evidence introduced at the hearing to meet the requirements of the "residuum rule."

Although administrative agencies may rely upon hearsay evidence, a residuum of competent legal evidence must support the agencies' findings. *Sandy State Bank v. Brimhall*, 636 P.2d 481 (Utah 1981); *Hackford v. Industrial Commission*, 11 Utah 2d 312, 358 P.2d 899 (1961). The Utah Supreme Court has held that the "residuum rule" applies to proceedings before the Industrial Commission, *Hackford v. Industrial Commission*, 11 Utah 2d 312, 358 P.2d 899 (1961), the Public Service Commission, *Lake Shore Motor Coach Lines Inc. v. Welling*, 9 Utah 2d 114, 339 P.2d 1011 (1959), and the commissioner of financial institutions, *Sandy State Bank v. Brimhall*, 636 P.2d 481 (Utah 1981). "No sound reason appears" why the residuum rule

should not apply to per se license suspension hearings before the Office of Drivers' License Services. *See Sandy State Bank v. Brimhall*, 636 P.2d at 486.

This conclusion is compelled by the protective status accorded the privilege to drive. Both the United States Supreme Court and the Utah Supreme Court have declared that licenses may not be revoked or suspended without due process of law. *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Ballard v. State Motor Vehicle Division*, 595 P.2d 1302 (Utah 1979). Application of the "residuum rule" guarantees that the examiner's decision of revocation is supported by reliable legal evidence and assures that the privilege to drive is not revoked arbitrarily. Therefore, we hold that the residuum rule applies to per se license suspension hearings.[1]

## II.

We now must consider whether the suspension of Kehl's license was based upon a residuum of competent legal evidence. To revoke or suspend a driver's license, the examiner must find (1) either a blood alcohol content of .08 percent, or that the driver was under the influence of alcohol or any drug or the combined influence of alcohol and any drug to a degree which rendered the person incapable of safely driving a vehicle; *and* (2) actual physical control of a motor vehicle. Utah Code Ann. § 41-6-44 (1983); Utah Code Ann. § 41-2-19.6 (1983). In this case, the examiner relied on the operational checklist of the breathalyzer equipment, the breathalyzer test result, and the arresting officer's sworn DUI Report to find that Kehl had a blood alcohol content of .08 percent, and that he was in actual physical control of a motor vehicle.[2]

1. The Court acknowledges the terrible consequences drunk drivers impose on society. This fact, however, cannot justify revoking or suspending a person's privilege to drive in the absence of a residuum of reliable legal evidence.

2. We assume that the Department's theory for suspension was that Kehl's blood alcohol content exceeded .08 percent rather than that he

was under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle because nowhere on the DUI Report does the arresting officer state that Kehl was under the influence of alcohol to a degree that rendered him incapable of safely operating a motor vehicle. Utah Code Ann. § 41-2-19.6 (1983); Utah Code Ann. § 41-6-44 (1983).

## A. BREATHALYZER EVIDENCE

The Department argues that the breathalyzer evidence is admissible under two exceptions to the hearsay rule: the business records exception, Utah R.Evid. 803(6), and the public records exception, Utah R.Evid. 803(8). Inasmuch as Utah Code Ann. § 41–6–44.3 (1983) allows affidavits to establish the necessary foundation for breathalyzer evidence, it is less restrictive than the business records exception to the hearsay rule, Utah R.Evid. 803(6). Therefore, we examine the Department's position under Utah Code Ann. § 41–6–44.3 (1983) and not Utah R.Evid. 803(6).

Section 41–6–44.3 governs the admissibility of chemical breath tests as business records.[3] The Utah Supreme Court recognized this statute as a valid exception to the hearsay rule, but required a proper foundation for the breathalyzer evidence:

[I]n place of the officer's testimony, section 41–6–44.3 permits the admission of affidavits regarding the maintenance of a specific breathalyzer as evidence of the proper functioning of that breathalyzer machine and the accuracy of the ampoules.

*Murray City v. Hall*, 663 P.2d 1314, 1320 (Utah 1983).[4]

In this case, there are no affidavits establishing the proper maintenance of the breathalyzer machine or that the test was administered by a qualified operator. Therefore, the operational checklist cannot be admitted because it lacks the foundation required by Utah Code Ann. § 41–6–44.3 (1983). The breathalyzer test result is also inadmissible because the operational checklist, which is the only foundation for the admission of the breathalyzer test result, is excluded.

The Department also claims that the operational checklist and the breathalyzer test result are admissible as public records. Utah R.Evid. 803(8)(B).[5] In this case, the operational checklist and the breathalyzer test result are reports of a public agency, the Utah Highway Patrol. The arresting officer personally conducted the test and read the results. Moreover, the officer had a duty to report the results of the breathalyzer test.

However, the "sources of information or other circumstances" surrounding the prep-

---

3. Utah Code Ann. § 41–6–44.3 (1983) provides:

 (1) The commissioner of public safety shall establish standards for the administration and interpretation of chemical analysis of a person's breath including standards of training.

 (2) In any action or proceeding in which it is material to prove that a person was driving or in actual physical control of a vehicle while under the influence of alcohol or driving with a blood alcohol content statutorily prohibited, documents offered as memoranda or records of acts, conditions or events to prove that the analysis was made and the instrument used was accurate ... shall be admissible if:

 (a) The judge finds that they were made in the regular course of the investigation at or about the time of the act, condition, or event; and

 (b) The source of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness.

 (3) If the judge finds that the standards established under subsection (1) and the conditions of subsection (2) have been met, there is a presumption that the test results are valid and further foundation for the introduction of the evidence is not necessary.

4. Section 41–6–44.3 was amended after *Murray City v. Hall*, 663 P.2d 1314 (Utah 1983), was

decided. However, the amendments do not affect the holding of *Murray* with respect to the foundational affidavits required to admit chemical breath test results.

5. Utah R.Evid. 803(8) provides:

 Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, *unless the sources of information or other circumstances indicated lack of trustworthiness.* (Emphasis added.)

 We apply the Rules of Evidence adopted on April 1, 1983 and effective September 1, 1983 because the per se hearing was held on September 6, 1983. *United Securities Corp. v. Bruton,* 213 A.2d 892 (D.C.App.1965); *Bingham v. Blunk,* 253 Iowa 1391, 116 N.W.2d 447 (1962); *Alston v. Forsythe,* 226 Md. 121, 172 A.2d 474 (1961) (newly adopted Rules of Evidence apply to all proceedings after their effective date).

aration of the operational checklist and breathalyzer test result "indicate a lack of trustworthiness." The operational checklist must be completed by, and the breathalyzer test must be administered by, a "qualified" operator of the breathalyzer equipment. *Breath Testing Regulations*, Department of Public Safety, Section V, (April 1, 1981) (promulgated by the commissioner of public safety pursuant to Utah Code Ann. § 41-6-44.3(1)(1979)). In this case, the record is void of the qualifications of the officer administering the breathalyzer test. Officer Murray did not testify that he had successfully completed the mandatory training course prescribed by the commissioner of public safety or that he had completed the approved recertification training course. Furthermore, the record does not establish that the breathalyzer machine was calibrated according to the standards determined by the commissioner of public safety. *Id.* at Section III. Consequently, neither report is admissible as a public record.

### B. THE ARRESTING OFFICER'S SWORN DUI REPORT FORM

The Department claims that the arresting officer's sworn DUI Report form is admissible under the two exceptions to the hearsay rule previously discussed: the business records exception, Utah R.Evid. 803(6),[6] and the public records exception, Utah R.Evid. 803(8). *Supra* note 5, at 5.

■ The arresting officer's sworn DUI Report form cannot be admitted as a business record because it lacks proper foundation. Neither the arresting officer nor the custodian of police records testified that the report was prepared in the regular course of business, contemporaneously with the arrest of Kehl.

6. Utah R.Evid. 803(6) provides in pertinent part: A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, *all as shown by the testimony of the custodian or*

■ The DUI Report is admissible under Utah R.Evid. 803(8)(B), the public records exception, to the extent it contains the officer's personal first-hand observations as previously discussed with reference to the operational checklist and the breathalyzer test result.

Section X of the DUI Report form is entitled "Chemical Tests." This section requires the arresting officer to record the results of the breathalyzer test. However, we have previously found the test result in this case unreliable.[7] To allow the double-hearsay, ultimate conclusion of the breathalyzer test in through the back door without the foundational affidavits required under Utah Code Ann. § 41-6-44.3 (1983), would violate the spirit of *Murray City v. Hall*, 663 P.2d 1314 (Utah 1983). The results of the breathalyzer test must be stricken because the "sources of information and other circumstances" indicate a lack of trustworthiness. Utah R.Evid. 803(8)(B).

### III.

The Court's decision should not hinder the State from expeditiously removing drunk drivers from public roads. The Court acknowledges the financial burden of calling as a witness in every DUI drivers' license revocation hearing the person who tested the accuracy of the breathalyzer equipment and administered the test. This is precisely the reason why the Utah Supreme Court has allowed the use of affidavits to establish the reliability and accuracy of breathalyzer evidence in court. *Murray City v. Hall*, 663 P.2d at 1321-1322. The cost and effort of preparing the required affidavits and proffering them at the per se

*other qualified witness,* unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.... (Emphasis added.)

7. If the report were proffered by the State in a criminal prosecution for driving under the influence of alcohol, even with the proper "reliability" affidavits, it would clearly be inadmissible under the public records exception. Utah R.Evid. 803(8)(B).

hearing is minimal. Absent such a showing, however, the Court will not presume the accuracy and reliability of the breathalyzer results especially when the evidence is being admitted under Utah Code Ann. § 41-6-44.3 (1983) which compromises the right of confrontation.

 The Department failed to establish a prima facie violation of Utah Code Ann. § 41-6-44 (1983). There was no evidence admissible in a court of law to establish that Kehl's blood alcohol content was .08 percent. Accordingly, the hearing examiner's order to suspend Kehl's driver's license was not supported by a residuum of legal evidence and the trial court was correct to reverse that order.

## IV.

Kehl challenges the constitutionality of the per se statutory scheme alleging it violates his rights to due process and equal protection of law under the federal and state constitutions. Inasmuch as we hold that the examiner's order to suspend Kehl's driver's license was not supported by a residuum of legal evidence, we decline to reach the constitutional issues raised by Kehl. *Goodsel v. The Department of Business Regulation,* 523 P.2d 1230 (Utah 1974).

Affirmed. Costs awarded to Kehl.

GARFF and JACKSON, JJ., concur.