STATE of Utah, In the Interest of N.R., a person under eighteen years of age.

L.R. and C.R., Appellants,

v.

STATE of Utah, Appellee.

No. 971369–CA.

Court of Appeals of Utah.

Oct. 22, 1998.

Margaret P. Lindsay, Aldrich Nelson Weight & Esplin, Provo, for Appellants.

Jan Graham, Atty. Gen. and John Peterson, Asst. Atty. Gen., Salt Lake City, for Appellee.

Martha Pierce, Claralynn Hill, Salt Lake City, Guardians Ad Litem.

Before Judges BENCH, BILLINGS, and WILKINS.

## OPINION

BILLINGS, Judge:

C.R. and L.R. (appellants) appeal the juvenile court's termination of their parental rights for neglect and unfitness. We affirm.

## FACTS

C.R. is a 19 year old woman suffering from severe mental and emotional disorders. L.R. also suffers from several personality disorders that impair his ability to parent N.R.

On August 29, 1996, C.R. gave birth to a boy, N.R. Two days after N.R.'s birth, the Division of Child and Family Services (DCFS) removed N.R. from appellants' custody alleging neglect. Appellants were homeless and living in a motel room at the time of N.R.'s removal. DCFS employees who visited the motel room discovered a large number of empty beer cans and found that N.R. had not been fed, changed, or cleaned since he was released from the hospital. N.R. was hungry, dirty, dehydrated, and appeared to be jaundiced.

The juvenile court found that N.R. was a "neglected child" under Utah Code Ann. § 78–3a–103(1)(q)(i) (1996),[1] and that this neglect justified terminating parental rights under Utah Code Ann. § 78–3a–407(2) (1996). The court also concluded that reunification services need not be provided under Utah

---

1. We cite to the 1996 version of the statute throughout this opinion, but note that there have been revisions in the 1998 statutory supplement.

Code Ann. § 78–3a–311(3)(b)(ii) (1996), because "[e]ach of the parents is suffering from a mental illness or condition which renders them both incapable of responding to reunification services, and it is unlikely ... even if reunification services were provided that ... either of them would be able to provide adequate care for the child within 12 months." Consequently, the court terminated appellants' parental rights under section 78–3a–407(3) based on neglect and parental unfitness.

## ANALYSIS

Appellants do not challenge either the juvenile court's findings of neglect and unfitness or its termination of their parental rights based on these findings. Rather, appellants argue that they were entitled to reunification services under Utah Code Ann. § 78–3a–311(2)(a) (1996), and that the juvenile court violated their rights to equal protection when it denied them reunification services based on their mental disabilities. In sum, they make a facial challenge to Utah Code Ann. § 78–3a–311(3)(b)(ii).

### I. Mootness

We first address the threshold issue of whether appellants' claims are moot. The State argues this case is moot because appellants have not challenged the findings of neglect and unfitness or requested any specific relief that would reverse the trial court's termination of their parental rights.[2] Generally, this court declines to issue advisory opinions on moot issues. *See, e.g., Strollo v. Strollo,* 828 P.2d 532, 534 (Utah Ct.App. 1992). However, if we were to find section 78–3a–311(a)(ii) unconstitutional, we would be forced to remand this case for reconsideration of the denial of reunification services. Furthermore, this case presents an issue of public import that is likely to recur and is

capable of evading judicial review. *See id.* at 533–34 (retaining jurisdiction on technically moot case because "the issue involves construction of a statute which courts must routinely apply, ... is an issue of wide and significant public concern, and ... is likely to recur and would likely escape judicial review"); *Kehl v. Schwendiman,* 735 P.2d 413, 415 (Utah Ct.App.1987) (retaining jurisdiction over technically moot issue "that affects the public interest, is likely to recur, and ... is capable of evading review"). Thus we address appellants' constitutional challenge.

### II. Equal Protection

In addressing a facial challenge to a statute, we adhere to "the principle that 'the prerogative of the legislature as the creators of laws is to be respected.'" *State v. Bell,* 785 P.2d 390, 397 (Utah 1989) (quoting *Zamora v. Draper,* 635 P.2d 78, 80 (Utah 1981)). Thus, we will not "'declare a statute unconstitutional unless it is determined to be so beyond a reasonable doubt.'" *Id.* at 398 (citations omitted).

Section 78–3a–311(3) states the grounds on which a juvenile court may order or deny reunification services to parents of children who are placed in state custody:

(3)(a) Because of the state's interest in and responsibility to protect and provide permanency for children who are abused, neglected, or dependent, the Legislature finds that a parent's interest in receiving reunification services is limited. The court may, under any circumstances, determine that efforts to reunify a child with his family are not reasonable or appropriate, based on the individual circumstances, and that reunification services should not be provided.

(b) There is a presumption that reunification services should not be provided to a parent if the court finds, by clear and

2. The Guardian Ad Litem also argues that appellants failed to preserve their constitutional challenge to section 311 because they did not file a separate appeal of the denial of services under section 311 along with their appeal of the termination order. We disagree. The court in this case issued only one order: the termination order of May 15, 1997. This order terminated parental rights for unfitness after stating in the

conclusions of law that services should be denied under section 311 because the parents suffered from mental illness rendering them incapable of benefiting from reunification services. The parents certified this order for appeal and raised their constitutional challenge to section 311 before the trial court. Thus we conclude they have preserved this issue for appeal.

convincing evidence, that any of the following circumstances exist:

. . . .

(ii) the parent is suffering from a mental illness of such magnitude that it renders him incapable of utilizing reunification services; that finding shall be based on competent evidence from mental health professionals establishing that, even with the provision of services, the parent is unlikely to be capable of adequately caring for the child within 12 months; . . . or

. . . .

(x) any other circumstances that the court determines should preclude reunification efforts or services.

Utah Code Ann. § 78–3a–311(3)(a) to (b)(x).

Appellants argue that Utah Code Ann. § 78–3a–311(3)(b), violates the Federal Equal Protection Clause, see U.S. Const. amend. XIV, § 1, because it discriminates against them based on their mental disabilities and is not narrowly tailored to achieve a compelling governmental interest.[3] Appellants claim that section 78–3a–311 creates a presumption against mentally disabled parents that denies them equal protection of law by treating them differently than other parents.

■■■ Utah courts take a "dual approach" to analyzing equal protection claims. See Bell, 785 P.2d at 398. If a challenged classification involves a "suspect class" or infringes on a fundamental right, we apply a "strict scrutiny test" and uphold the classification only if it furthers a compelling state interest. See id. at 398–99. However, if the challenged classification does not involve a suspect class or impinge on a fundamental right, we apply a "rational basis test" under which we will uphold the classification as long as it is rationally related to a valid legislative purpose. See id. Thus, we must first determine whether the classification at issue involves

either a suspect classification or a fundamental right.

## A. Suspect Classification

In *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 442, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313 (1985), the United States Supreme Court held that mental disability is not a suspect classification subject to heightened scrutiny.

Doubtless, there have been and there will continue to be instances of discrimination against the retarded that are in fact invidious, and that are properly subject to judicial correction under constitutional norms. But the appropriate method of reaching such instances is not to create a new quasi-suspect classification and subject all governmental action based on that classification to more searching evaluation. Rather, we should look to the likelihood that governmental action premised on a particular classification is valid as a general matter, not merely to the specifics of the case before us. Because mental retardation is a characteristic that the government may legitimately take into account in a wide range of decisions, and because both State and Federal Governments have recently committed themselves to assisting the retarded, we will not presume that any given legislative action, even one that disadvantages retarded individuals, is rooted in considerations that the Constitution will not tolerate.

*Id.* at 446, 105 S.Ct. at 3255–57 (discussing several reasons for concluding that mental retardation does not merit quasi-suspect classification).

Appellants urge us to apply strict scrutiny in this case despite this controlling case law and argue that the subsequent passage of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101(a)(3) (1997), requires us to apply strict scrutiny to classifications based on disability. Appellants base this assertion

---

**3.** Appellants also make arguments under the Uniform Operation of Laws Clause, see Utah Const. Art. I, § 24. However, they failed to adequately raise their Utah constitutional challenge at trial. "[T]he proper forum in which to commence thoughtful and probing analysis of state constitutional interpretation is before the trial court, not

. . . for the first time on appeal." *State v. Bobo*, 803 P.2d 1268, 1273 (Utah Ct.App.1990) (citations omitted). Thus, we decline to address appellants' arguments under the Utah Constitution, and limit our analysis to appellants' federal equal protection challenge.

on the United States Supreme Court's discussion of disability-based classifications in *Cleburne:*

> [I]t is undeniable ... that those who are mentally retarded have a reduced ability to cope with and function in the everyday world. Nor are they all cut from the same pattern[,] ... they range from those whose disability is not immediately evident to those who must be constantly cared for. *They are thus different, immutably so, in relevant respects.*

*Cleburne,* 473 U.S. at 442, 105 S.Ct. at 3255–56 (emphasis added). The Court further stated that it would not apply heightened scrutiny to classifications based on disability "absent controlling congressional direction." *See id.* at 439, 105 S.Ct. at 3254. Appellants argue that the ADA constitutes a controlling congressional direction that mandates the application of strict scrutiny to all classifications based on disability.

■ Regardless of the dicta in *Cleburne,* the United States Supreme Court "do[es] not acknowledge, and ... do[es] not hold that other courts should conclude that our more recent cases have, by implication, overruled an earlier precedent.... [Rather] lower courts should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997) (citing *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989)); *accord Bartlett v. New York State Bd. of Law Exam'rs,* 970 F.Supp. 1094, 1134–35 (S.D.N.Y.1997). Thus we find no justification in the ADA for departing from the clearly controlling holding in *Cleburne.* We therefore conclude that the disability-based classification in this case is not subject to strict scrutiny.

### B. Fundamental Interest

■ We must next determine whether Utah Code Ann. § 78–3a–311(3)(b)(ii), involves a fundamental interest. Appellants argue the section impinges on their fundamental interest as parents. *See, e.g., In re J.P.,* 648 P.2d 1364, 1375 (Utah 1982) (holding parental rights are constitutionally protected fundamental interest). The State argues, however, that the interest at stake here is not their continued parental rights, but rather their right to receive reunification services. We agree.

The Utah Supreme Court addressed a similar issue in *State v. Bell,* 785 P.2d 390, 399 (Utah 1989). There, a juvenile criminal defendant argued that his right to equal protection was violated by a statute authorizing prosecution of juveniles as adult criminal defendants. *See id.* at 395. The juvenile invoked the strict scrutiny test "on the theory that 'liberty' is a fundamental right." *Id.* at 399. However, the supreme court rejected this argument, stating:

> A juvenile has no right to treatment in the juvenile system or " 'to be specially treated as a juvenile delinquent instead of a criminal offender.... [S]uch treatment is entirely a gratuitous creature of the legislature subject to such conditions as the legislature may impose without violating constitutional guarantees.' "... [T]he defendant's assertion that [the court] should apply the strict scrutiny test since the fundamental right of the defendant's liberty was involved ... [does] not withstand analysis ... because a deprivation of liberty occurs only upon the defendant's conviction of a crime for which he is criminally responsible, and since there is no constitutional right to youthful offender treatment, a defendant cannot assert a valid claim of denial of liberty if he or she is charged and sentenced as an adult in accordance with the law.
>
> ....
>
> Since the state may rightfully prosecute as adults all juveniles[,] ... a particular defendant suffers no deprivation of liberty because the state exercises this right, notwithstanding the fact that if the state decided not to do so ... a defendant may receive a benefit.

*Id.* (citations and footnotes omitted).

■ Our case is similar to *Bell.* Reunification services are a gratuity provided to parents by the Legislature, and appellants thus have no constitutional right to receive these

services. *See State ex rel. M.E.C.,* 942 P.2d 955, 959 (Utah Ct.App.1997); *State ex rel. L.D.S.,* 797 P.2d 1133, 1139 (Utah Ct.App. 1990). Utah courts have consistently upheld the state's right not to provide reunification services when it determines they would be inappropriate. *See J.C.O. v. Anderson,* 734 P.2d 458, 462–63 (Utah 1987); *State ex rel. W.D. III v. W.M.,* 856 P.2d 363, 368–69 (Utah Ct.App.1993); *State ex rel. M.A.V. v. Vargas,* 736 P.2d 1031, 1034–35 (Utah Ct.App.1987). We thus conclude appellants' limited interest in receiving reunification services is not a fundamental right.

## C. Rational Basis Analysis

 Because we conclude that section 78–3a–311(3)(b)(ii) does not involve a suspect classification or a fundamental interest, we will uphold it as long as it bears a rational relation to a legitimate legislative purpose.[4] Appellants argue that section 78–3a–311(3)(b)(ii) is unconstitutional even under the rational basis test because it singles out mentally disabled parents for different treatment from other parents. This argument ignores substantial case law upholding classifications based on legislatively "relevant" differences. In *Cleburne,* 473 U.S. at 433, 105 S.Ct. at 3257, the United States Supreme Court stated that "mental retardation is a characteristic that the government may legitimately take into account in a wide range of decisions ... [and] we will not presume that any given legislative action, even one that disadvantages retarded individuals, is rooted in considerations that the Constitution will not tolerate." In *Bell,* our supreme court upheld a legislative classification based on similar reasoning, stating that

> the fundamental principles of equal protection ... do not require that things different in fact be treated in the law as though they were the same or that equal treatment be afforded all persons without recognition of differences in relevant and reasonable circumstances.

[E]qual protection safeguards are offended only if it is determined that the subject classification rests upon grounds wholly irrelevant to the achievement of the government's purpose.

785 P.2d at 398. (Citations and footnotes omitted.)

The classification of mentally ill parents in section 78–3a–311(3)(b)(ii) meets the rational basis test. The state has a strong interest in protecting neglected or abused children and in providing them with permanent placements as soon as feasible. Section 78–3a–311(3)(a) explicitly balances this strong state interest against the parental interest in receiving reunification services by stating that, "[b]ecause of the state's interest in and responsibility to protect and provide permanency for children who are abused, neglected, or dependent children, the Legislature finds that a parent's interest in receiving reunification services is limited."

Furthermore, the statute places the decision to provide or deny services in the judge's discretion and emphasizes that a judge may deny services if for any reason he or she finds they are inappropriate. *See id.* The section's classification of parents based on mental illness is rationally related to protecting and providing permanency for neglected children because it ensures that courts do not delay a child's placement by ordering reunification services unless the parents have a reasonable probability of being able to regain custody.

Finally, section 78–3a–311(3)(b)(ii) does not single out mentally disabled parents alone for special treatment. It also imposes a presumption against providing services for other parents who are unlikely to regain custody, including parents who cannot be located, parents who have previously abused or neglected other children, and parents who have perpetrated severe abuse. Thus, we conclude that the classification of parents based on mental disability in section 78–3a–311 does not offend equal protection because it is

---

4. We have analyzed appellants' claim under the rational basis test. However, even if we were to apply the strict scrutiny test, we conclude this section would be constitutional as the state has a compelling interest in providing neglected chil-

dren with permanency, and the section is narrowly tailored to affect only those parents that a court finds are unable to benefit from services and unlikely to achieve reunification within a reasonable time frame.

rationally related to a legitimate statutory purpose.

## CONCLUSION

We hold that section 78–3a–311(3)(b)(ii) does not violate equal protection by treating mentally disabled parents differently in considering whether to provide reunification services. Thus we conclude that the juvenile court was not required to order reunification services for appellants before terminating their parental rights. We therefore affirm.

WILKINS, Associate P.J., and BENCH, J., concur.