**2015 UT App 39**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF A.K., A PERSON
UNDER EIGHTEEN YEARS OF AGE.

T.K.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20140269-CA
Filed February 20, 2015

Fourth District Juvenile Court, Heber Department
The Honorable Mary T. Noonan
No. 1085500

Corbin B. Gordon and Marie N. Bramwell, Attorneys
for Appellant

Sean D. Reyes and John M. Peterson, Attorneys
for Appellee

Martha Pierce, Guardian ad Litem

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
JAMES Z. DAVIS and JOHN A. PEARCE concurred.

TOOMEY, Judge:

¶1     T.K. (Mother) challenges the juvenile court's decision to
terminate her parental rights to A.K. We affirm.

## BACKGROUND[1]

¶2 Mother has three biological children: E., J.P., and A.K.[2] In 2006, E. was removed from Mother's custody in California because of domestic violence and substance abuse issues. Mother participated in reunification services, but E. was never returned to her custody and her parental rights with respect to E. were terminated in March 2008.

¶3 J.P. was born to Mother and G.G. in 2009. In the fall of 2010, also because of domestic violence and substance abuse issues, J.P. was removed from Mother's custody. Mother participated in reunification services again, which included counseling sessions for domestic violence, substance abuse, and parenting.

¶4 A.K. was born to Mother and R.K. (Father) in June 2011. A.K. remained in Mother's custody because she was maintaining sobriety and stability at that time, and J.P. was returned to her care later that year.

¶5 Mother's reunification with J.P. was short-lived, however, because in November 2012, she started abusing drugs again. Mother and Father also began fighting with one another, which prompted Mother to send A.K. and J.P. to live with Father's mother (Grandmother). Grandmother took both children to Utah

---

1. "We recite the facts in a light most favorable to the juvenile court findings." *In re S.Y.T.*, 2011 UT App 407, ¶ 2 n.1, 267 P.3d 930 (citation and internal quotation marks omitted).

2. Although E. and J.P. are not involved in this appeal, we include details about Mother's involvement in their lives to provide context for the juvenile court's decision.

while Mother and Father remained in California to work on their relationship. Mother and Father joined Grandmother and the children in Utah in March 2013.

¶6     In June 2013, Mother and Father were arrested and incarcerated. Consequently, the children were placed in the custody of the Division of Child and Family Services (DCFS). In its Verified Petition for Custody (Verified Petition), DCFS asked the juvenile court to find that J.P. and A.K. were "abused, and/or neglected" and to award it custody and guardianship. In support of the Verified Petition, DCFS described recent instances of domestic violence between the parents, the parents' history of substance abuse, J.P.'s prior removal from Mother's care because of "drug issues," the parents' criminal histories, J.P.'s report that Mother slaps him and A.K., and the parents' chaotic lifestyle as evidenced by five moves between March 2013 and June 2013 and a lack of household furniture. Because of their incarceration, Mother and Father stipulated that DCFS would have temporary custody of the children. The juvenile court scheduled a pretrial hearing on the Verified Petition for June 20, 2013.

¶7     Mother and Father admitted most of the allegations set forth in DCFS's Verified Petition. Accordingly, at the subsequent adjudication hearing, the juvenile court adopted those allegations as facts and ultimately concluded that J.P. and A.K. "are neglected in that they lack proper parental care by reason of the fault or habits of the mother and father." The court also substantiated DCFS's "findings of child endangerment, physical neglect, and domestic violence related child abuse against both parents." Based on its findings and conclusions, the court granted custody and guardianship of J.P. and A.K to DCFS.

¶8     The court held a disposition hearing on September 19, 2013, to determine whether to order reunification services. DCFS opposed reunification services. The court heard testimony from Mother and accepted her stipulation to additional facts regarding her history in California. Based on her testimony and

stipulations, the court concluded that pursuant to subsections 78A-6-312(20)(a), (g), (h), and (*l*) of the Utah Code, reunification services were "not appropriate" and "not in the children's best interest" for the following reasons:

> (a) E. had already been removed, notwithstanding Mother's participation in reunification services;
>
> (b) J.P. had previously been removed from Mother's care because of "domestic violence, drug use, and instability";
>
> (c) Mother had participated in inpatient and outpatient reunification services aimed at protecting J.P. "from further incidents of abuse and neglect";
>
> (d) Despite participating twice in reunification services, J.P. and A.K. were now in DCFS custody because of "the same issues . . . that were supposedly addressed back then" by those "extensive" services;
>
> (e) Mother failed to remove herself from Father and the court was skeptical of her claim they had separated.

¶9 The court acknowledged Mother's determination to successfully parent her children when she was supervised, but noted that when she was unsupervised, she seemed to "return[] to patterns of behavior that expose the children to neglect." In declining to order reunification services, the court also noted it had considered the statutory factors listed in section 78A-6-312(22) of the Utah Code, including "the history of violent behavior," Mother's failure to respond to previous services, and "the fact that the children were abused and/or neglected while

the parents were abusing drugs or alcohol." The court then informed Mother she could seek services on her own.

¶10 At the permanency hearing, the juvenile court adopted the primary permanency goal of permanent custody and guardianship of J.P. to his biological father, G.G., and concluded that the primary permanency goal in A.K.'s best interest would be adoption. Consequently, DCFS filed a Verified Petition for Termination of Parental Rights with regard to A.K.

¶11 At the termination trial, Mother testified on her own behalf. In addition, she called witnesses, including mental-health, substance-abuse, and parenting counselors from whom she had or was currently receiving treatment. Specifically, Verna Dallin testified that she worked with Mother twice in August 2013 and regularly from November 2013 to January 2014 to help strengthen life skills and manage anxiety. Additionally, over Mother's objections, the court heard testimony from A.K.'s foster mother (Foster Mother) about his improvement and development while in DCFS's custody. Foster Mother also testified that if A.K. became "legally free" for adoption, she would be interested in adopting him.

¶12 On March 20, 2014, the juvenile court concluded, "It is appropriate and strictly necessary to terminate the father's and mother's parental rights as [A.K.] needs to achieve a sense of permanency, stability and security and the parents have been unable to demonstrate an ability to meet [A.K.'s] needs and provide him with that stability and security."[3] In support of this conclusion the court cited, among other things, Mother's history in California, her continued struggles with domestic violence

---

3. Father has not challenged the termination of his rights and is not a party to this appeal.

and substance abuse despite receiving reunification services on two prior occasions,[4] her decision to align herself with Father instead of the children, her unstable living situation, and her decision to delay approximately "one month after the State had filed its petition to terminate her parental rights" before beginning to "avail herself of services." Mother timely appealed.

ISSUES FOR REVIEW

¶13 First, Mother contends the juvenile court improperly found reunification services were inappropriate. She argues that the court (A) failed to properly weigh evidence that rebutted the presumption against reunification services, and (B) erred in finding reunification services inappropriate under Utah Code section 78A-6-312(22). Second, she argues the court erred when it terminated her parental rights because its findings in support of termination were against the weight of the evidence. Finally, Mother argues that the juvenile court's decision to permit Foster Mother to testify was improper because she was biased.

ANALYSIS

I. The Clear Weight of the Evidence Supports the Juvenile Court's Decision Not to Order Reunification Services.

¶14 Mother argues the juvenile court erred when it found reunification services inappropriate. Specifically, she argues the court (A) failed to properly weigh evidence that rebutted the

---

4. The court specifically noted, Mother tested positive for methamphetamine and marijuana twelve times between October 2013 and February 2014 and observed that "[t]he ongoing use of illegal substances does not equate to appropriate parenting."

presumption against ordering reunification services, and (B) improperly found that she failed to respond to previous reunification services and had a history of violence toward A.K. and his immediate family members.

¶15   The juvenile court's decision to deny reunification services is within its sound discretion, and parents "have no constitutional right to receive these services." *In re N.R.*, 967 P.2d 951, 955–56 (Utah Ct. App. 1998); *see also* Utah Code Ann. § 78A-6-312(2)(b) (LexisNexis Supp. 2014).[5] Moreover, because of its advantageous position with regard to the parties and witnesses, we afford the juvenile court "a high degree of deference," overturning its decision only if it is "against the clear weight of the evidence or leave[s] the appellate court with a firm and definite conviction that a mistake has been made." *See In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 (citation and internal quotation marks omitted). In other words, "the juvenile court's decision could be overturned only if it either failed to consider all of the facts or considered all of the facts and its decision was nonetheless against the clear weight of the evidence." *Id.* "When a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *Id.*

A.   The Juvenile Court Did Not Err When It Found a Presumption Against Ordering Reunification Services.

¶16   The juvenile court found a presumption against reunification services because Mother's first child, E., was removed and her parental rights were terminated after reunification efforts failed. According to Utah Code subsection

---

5. Because recent amendments to the relevant statutes do not affect our analysis, we cite the current edition of the Utah Code Annotated.

78A-6-312(20)(g), "[t]here is a presumption that reunification services should not be provided to a parent if the court finds, by clear and convincing evidence, that . . . the parent's rights are terminated with regard to any other minor."

¶17    Mother does not dispute that there is clear and convincing evidence to support the finding that her parental rights were terminated with regard to E. Instead, she argues the juvenile court abused its discretion when it improperly weighed the evidence that she had submitted to rebut the presumption against reunification services.[6] In particular, Mother asserts that although there was a presumption against reunification services based on the termination of her parental rights with regard to E., this was outweighed by the following evidence: (1) "the second offer of reunification services in California, in 2010, resulted in full restoration of custody [with regard to J.P.] after successful completion of numerous state services, and a period of several years of stability and progress"; (2) losing custody of E. only occurred because she was young and under the control of an abusive gang member; (3) Father no longer lived with her; and

---

6. Mother also argues the juvenile court misinterpreted Utah Code subsection 78A-6-312(20)(h) and improperly found a presumption against reunification services with regard to A.K. because the court should consider only his prior removals, not the removal of E. or J.P. We do not address the merits of this argument because even if the court misinterpreted subsection (h), the court found by the clear and convincing evidence a presumption against reunification based on at least two other subsections of the statute. *See* Utah Code Ann. § 78A-6-312(20)(g), (*l*) (LexisNexis Supp. 2014). Accordingly, even if the court misinterpreted subsection (h), it would be harmless error because there is a presumption against services based on subsections (g) and (*l*).

(4) testimony by her therapist, Dallin, shows she could benefit from further reunification services.

¶18    First, the court clearly acknowledged Mother's successful completion of reunification services with regard to J.P. but ultimately found it doubtful she could remain successful another time without the State's supervision. Even with that supervision, Mother repeatedly tested positive for drugs throughout A.K.'s welfare proceedings and had not completed the reunification services provided with regard to E. Additionally, J.P. was removed from Mother's custody for a second time for the same issues that were supposedly addressed by her previous reunification efforts.

¶19    Second, Mother does not argue that the court failed to consider that she was "young and under the control of an abusive gang member" when E. was removed from her custody. Instead, she argues only that this fact was inappropriately weighed, but she fails to demonstrate how being young and under the control of an abusive man outweighed the undisputed fact that her parental rights with regard to E. were terminated after unsuccessful reunification efforts.

¶20    Third, the court considered Mother's statement that she had separated from Father, but it found this was outweighed by the fact they have not divorced and by Mother's pattern of separating and reuniting with him. Moreover, Mother did not sever ties to Father and continued to communicate with him.

¶21    Finally, Dallin's testimony that Mother would benefit from further reunification services did not outweigh the other evidence. Mother presented this evidence only at the termination hearing, months after the disposition hearing during which the court decided against ordering reunification services. Moreover, Dallin's testimony seemed to contradict Mother's contention that she would successfully complete reunification services. At the termination hearing, Dallin testified that although Mother had

improved in their short time working together, it was not uncommon for a person with a similar history to go back and forth with services and repeat patterns before they "pull it together enough to figure out what else they need to do in their life." At any time during the proceedings Mother could have obtained treatment on her own to attain stability and sobriety. Instead, she received sporadic services and continued to abuse drugs and live a chaotic lifestyle.

¶22    In sum, Mother has failed to demonstrate how the juvenile court improperly weighed the evidence or how the court's decision is an abuse of discretion. Moreover, to place more emphasis on Mother's past successes and give them their "full evidentiary weight" as Mother requests, would require us to inappropriately reweigh the evidence and substitute our judgment for that of the juvenile court.

B.    The Juvenile Court Did Not Err in Finding that Mother Failed to Respond to Previous Reunification Services and Had a History of Violent Behavior Directed at A.K. or an Immediate Family Member.

¶23    Mother argues the juvenile court erred when it found that ordering reunification services was inappropriate under Utah Code section 78A-6-312(22). Specifically, Mother argues the court erred when it found that she (1) failed to respond to previous reunification services, and (2) had a history of violent behavior directed at A.K. or an immediate family member.[7] Section 78A-6-

---

7. Mother also argues that the court failed to consider the testimony of a competent professional at the disposition hearing in determining whether reunification services were appropriate. *See* Utah Code Ann. § 78A-6-312(22)(f) (LexisNexis Supp. 2014). We do not address this issue. Neither party presented professional testimony at the disposition hearing. We, therefore,

(continued...)

312(22) offers a non-exclusive list of factors the court must consider in determining whether reunification services are appropriate. *See* Utah Code Ann. § 78A-6-312(22)(a) to (g) (LexisNexis Supp. 2014). The statute gives the court the discretion to deny reunification services as long as it properly considers the applicable factors in making its determination. *See id.* § 78A-6-312(2)(b).

¶24 First, Mother argues the juvenile court improperly determined that she had failed to respond to previous reunification services. She claims that restoration of custody of J.P. shows she successfully responded to reunification services. The juvenile court found, however, that the children's removal after she had twice received reunification services, which supposedly addressed her problems, demonstrated her failure to respond to those services.

¶25 Utah Code subsection 78A-6-312(22)(a) requires the court to consider "failure of the parent to respond to previous services" in determining whether reunification services are appropriate. The court considered this factor when it acknowledged Mother's successful compliance with the services offered resulting in reunification with J.P., but doubted she would be capable of maintaining stability and sobriety without supervision. As discussed above, the court also considered that

---

understand Mother's argument to be that the State was required to present professional testimony before the juvenile court could decide the issue of reunification services. Mother's interpretation of this statute would in effect create an affirmative duty on the State to present expert testimony at the disposition hearing. Moreover, Mother failed to support this argument with proper authority or adequate briefing. *See* Utah R. App. P. 24(a)(9). Thus, she has failed to demonstrate error in the juvenile court's decision.

Mother failed to complete reunification services with regard to E. Because it adequately considered whether Mother had failed to respond to previous reunification services, the juvenile court did not abuse its discretion. We will not reweigh the evidence and substitute our judgment for that of the juvenile court's.

¶26 Second, Mother argues the juvenile court erred when it determined there was a history of violent behavior against A.K. or a family member. Specifically, Mother contends the juvenile court improperly weighed this factor against her because she was often the victim of the violence.

¶27 Utah Code subsection 78A-6-312(22)(c) requires the court to consider "any history of violent behavior directed at the child or an immediate family member" in determining whether reunification services are appropriate. Although the court made no factual findings regarding Mother's violent behavior toward A.K., the record shows J.P. reported to DCFS that Mother slaps him and A.K. Additionally, based on her criminal convictions, the court did find that Mother has a history of violent behavior directed at one of A.K.'s immediate family members, Father. Moreover, the court indicated it was "very troubled by the mother's behaviors and actions toward the father in that she appears to have ongoing feelings for the father . . . [and t]he mother may not be [as] firmly into separating herself from this violent man as she states." The court considered Mother a victim of domestic violence, but properly found A.K.'s "best interests" to be the paramount concern in determining whether reunification services were appropriate. *See id.* § 78A-6-312(5). We conclude the juvenile court properly exercised its discretion in weighing the evidence, including considering the history of violent behavior toward A.K. and his immediate family members.

¶28 The juvenile court's order contained pages of detailed findings addressing each of the factors in Utah Code section 78A-6-312(22) before concluding not to order reunification

services. Thus, because it was supported by the clear weight of the evidence and it properly considered and weighed all the facts, the court's decision not to order reunification services was not an abuse of discretion.

## II. The Clear Weight of the Evidence Supports the Juvenile Court's Termination of Mother's Parental Rights.

¶29    Mother argues the clear weight of the evidence presented at trial is against the juvenile court's ruling that she was unfit and has failed to adjust.[8] In particular, Mother argues the juvenile court failed to appropriately weigh her recent efforts to reunify with A.K and her past reunification successes.

¶30    "Whether a parent's rights should be terminated . . . re[lies] heavily on the juvenile court's assessment and weighing of the facts." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435. The juvenile court must weigh any evidence of Mother's present abilities against evidence of her past conduct, and her unwillingness or inability to improve her conduct. *Id.* ¶ 13. Because of its "advantaged position with respect to the parties and the witnesses," we afford the juvenile court "a high degree of deference," overturning its decision only if it is "against the clear weight of the evidence or leave[s] the appellate court with a

---

8. Mother also contends that the juvenile court's refusal to order reunification services "fast-tracked" the termination hearing and directly affected her fundamental rights to parent her child. Mother seems to argue that because her constitutional rights were affected when reunification services were denied, the juvenile court's decision to refuse to order reunification services should be reviewed under a higher standard or a strict scrutiny standard. To the extent that this could be a separate challenge on appeal, it is not adequately briefed and we do not address it. *See* Utah R. App. P. 24(a)(9).

firm and definite conviction that a mistake has been made." *Id.* ¶ 12 (citation and internal quotation marks omitted).

¶31   In *In re B.R.*, our supreme court upheld the juvenile court's decision to terminate a mother's parental rights, stating, "The juvenile court did not err in concluding that nine years of chronic drug use, including twelve months of continued drug use during the reunification period, was not outweighed by [the mother's] recent efforts." *Id.* ¶ 15. Furthermore, the court deemed it an "inappropriate substitution of the court of appeals' judgment for that of the juvenile court" to put more emphasis on a parent's recent rehabilitative efforts than the juvenile court did. *Id.* ¶ 14.

¶32   Here, the court acknowledged Mother's independent efforts to attend substance-abuse counseling, individual counseling, and parenting classes, but noted they were only initiated a little over a month after DCFS filed a petition to terminate her parental rights. The court expressly "consider[ed] these services in light of the past services that [Mother] participated in while living in California." In California, Mother participated in inpatient and outpatient treatment, individual counseling, and life-skills, anger-management, family-recovery, relapse-prevention, and parenting classes. Nevertheless, because her other children have since been removed on separate occasions for similar issues, the court found she had failed to demonstrate the skills previously taught. Furthermore, from November 2012 to the termination hearing, Mother failed to achieve any stability as she continued to live in hotels, stayed with friends or family, and went to jail. Despite extensive inpatient and outpatient treatment, Mother continues to habitually abuse drugs. Similar to *In re B.R.*, Mother's long history of drug abuse and pattern of instability is not outweighed by her recent efforts. Mother's longest period of sobriety was four years, but in the five-month period between the disposition hearing and the termination trial Mother tested positive for drugs at least twelve times. Indeed, at trial Mother

testified that using drugs is the only coping mechanism she knows.

¶33    While it is true that Mother successfully regained custody of J.P. after receiving services, the court found it troubling that J.P. and A.K. were removed for the same issues that were addressed in her previous reunification efforts. The court also noted these issues were the same issues that led to the termination of parental rights with regard to E. By weighing Mother's past reunification efforts—such as attending substance abuse treatment and parenting classes—and her past issues with drug abuse and domestic violence against her current drug abuse, instability, and delayed efforts to reunify with A.K., the court properly weighed her past circumstances against her present abilities. If we were to reweigh the evidence, putting more emphasis on Mother's recent reunification efforts or the absence of abusive men in her life, it would be an improper substitution of our judgment for the juvenile court's. Accordingly, we conclude the juvenile court did not abuse its discretion when it found Mother unfit and unable to adjust.

### III. The Juvenile Court Did Not Abuse Its Discretion When It Allowed Foster Mother to Testify.

¶34    Mother's final argument concerns the juvenile court's decision to allow Foster Mother to testify at trial. Mother argues that Foster Mother's testimony was inherently biased and allowing her to testify rendered the proceedings fundamentally unfair. The State responds that not only was the juvenile court required to "consider the ties between the foster family and the child," but Mother also had the opportunity to explore Foster Mother's bias during cross-examination, thereby challenging the credibility of her testimony. The State also argues there was no danger of unfair prejudice under rule 403 of the Utah Rules of Evidence in this case, because juvenile court judges "have special training and experience that gives them advantages in assessing the credibility of a witness."

¶35   Utah Code section 78A-6-510 requires the court to consider "whether the child has become integrated into the foster family to the extent that his familial identity is with that family." It lists a number of factors the court shall consider, including "the love, affection, and other emotional ties existing between the child and the parents, and the child's ties with the foster family." Utah Code Ann. § 78A-6-510(1) (LexisNexis 2012). Foster parents are competent witnesses to testify to these issues because they have "personal knowledge of the matter." Utah R. Evid. 602. Although foster parents may be biased toward adoption, we agree with the State that juvenile court judges have the requisite training and experience to assess those biases, particularly when the natural parent can cross-examine the foster parents. *See id.* R. 608(c) ("Bias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by other evidence."). Given this specialized training and experience, the danger for unfair prejudice would not merit exclusion of Foster Mother's testimony. The juvenile court did not abuse its discretion when it allowed Foster Mother to testify at the termination trial.

## CONCLUSION

¶36   The juvenile court properly found a presumption against ordering reunification services. Mother has failed to demonstrate that the juvenile court's decision against ordering reunification services and its findings that she was unfit and unable to adjust were against the clear weight of the evidence. Moreover, the juvenile court did not abuse its discretion by allowing Foster Mother to testify at the termination trial.

¶37   We affirm the juvenile court's decision to terminate Mother's parental rights with respect to A.K.

_____