2006 UT App 200

**STATE of Utah, in the interest of A.F., a person under eighteen years of age.**

**C.M.F., Appellant,**

v.

**State of Utah, Appellee.**

**No. 20050467–CA.**

Court of Appeals of Utah.

May 18, 2006.

---

Scott L. Wiggins, Salt Lake City, and Daniel G. Shumway, Layton, for Appellant.

Mark L. Shurtleff, Carol L.C. Verdoia, and John M. Peterson, Salt Lake City, for Appellee.

Martha Pierce and Katharina Christensen, Salt Lake City, Guardians Ad Litem.

Before Judges BENCH, BILLINGS, and ORME.

## OPINION

ORME, Judge:

¶ 1 C.M.F. (Mother) appeals the juvenile court's permanency order terminating reunification services and setting a permanency goal of adoption for A.F. (Child). We determine that we lack jurisdiction because the permanency order from which Mother appeals is not a final, appealable order.

## BACKGROUND

¶2 On August 27, 2004, just four days after his birth, Child was removed from Mother's custody. Two months later, the juvenile court adjudicated Child to be abused and neglected, and ordered reunification services. At the permanency hearing held in April 2005, the juvenile court terminated reunification services and set a permanency goal of adoption. The court's permanency order includes findings that Mother "failed to make necessary steps to establish a home free of abuse and risk," "failed to timely complete key elements of her service plan," and "failed to demonstrate that this child could safely be returned to her care."

¶3 On May 11, 2005, the State filed a petition to terminate Mother's parental rights in Child. Mother appealed to this court shortly thereafter. Upon receiving this case, we specifically requested that the parties brief the jurisdictional issue: "Whether a permanency order terminating reunification services and setting a permanency goal of adoption is a final, appealable order."

## OVERVIEW OF JUVENILE COURT PROCEEDINGS

¶4 When a child is initially removed from the home, a shelter hearing is required within seventy-two hours. *See* Utah Code Ann. § 78–3a–306(1) (Supp.2005). During this hearing, the juvenile court determines whether continued removal and protective custody are necessary to protect the child. *See id.* § 78–3a–306(5)(b), (9), (15). If the court determines continued removal is necessary, the court must hold an adjudication hearing no later than sixty days after the shelter hearing. *See id.* § 78–3a–308(2) (Supp.2005). The purpose of the adjudication hearing is to determine whether allegations of neglect, abuse, or dependency are true. *See id.* § 78–3a–310(1) (2002). *See generally id.* § 78–3a–305(1), (2)(a) (Supp. 2005). If the allegations are found to be true, the court must conduct a dispositional hearing within thirty days after the adjudication hearing. *See id.* § 78–3a–310(2).

¶5 At the dispositional hearing, the juvenile court determines a primary permanency goal for the child and determines whether reunification services are appropriate. *See id.* § 78–3a–311(2)(a)(i)(A)–(B) (Supp.2005). If the court does not order reunification services, the permanency hearing will be held within thirty days, *see id.* § 78–3a–311(2)(f)(iii); otherwise, the permanency hearing will be held upon termination of the reunification services. *See id.* § 78–3a–311(2)(f)(i). In the cases in which the court orders reunification services, it must also hold a review hearing during the time between the adjudication and permanency hearings—no more than six months after the child's initial removal. *See id.* § 78–3a–311.5 (Supp.2005). This hearing is to determine whether the Department of Child and Family Services (DCFS) is providing "reasonable efforts" to the family and whether the parent is fulfilling responsibilities required by the service plan. *Id.* § 78–3a–311.5(1).

¶6 The case then proceeds to the permanency hearing where the juvenile court determines whether the child may be safely returned to the parent's custody. *See id.* § 78–3a–312(2)(a) (Supp.2005). If the court determines that the child cannot be returned, it must terminate reunification services, *see id.* § 78–3a–312(4)(a)(i), and determine whether "the most appropriate final plan" for the child is "termination of parental rights, adoption, or permanent custody and guardianship." *Id.* § 78–3a–312(4)(a)(ii). And if this final permanency plan for the child involves the termination of parental rights, the case moves expeditiously toward that end. In fact, the termination hearing may even be consolidated with the permanency hearing, *see id.* § 78–3a–312(8); but in any event, "the petition for termination of parental rights shall be filed, and a pretrial held, within 45 calendar days after the permanency hearing." *Id.* § 78–3a–312(5).

¶7 The termination proceedings focus on whether any grounds exist for termination of parental rights. *See id.* § 78–3a–407(1) (Supp.2005). It is significant to our analysis that during the termination proceedings, the juvenile court usually readdresses the issues of whether DCFS made reasonable efforts to provide court-ordered services and whether the parent fulfilled responsibilities required

by the service plan. This assessment is often repeated at this stage because most grounds for termination require the juvenile court to find "that the division made reasonable efforts to provide [court-ordered] services." *Id.* § 78–3a–407(3)(a). And although the parent's failure to comply with a service plan is not itself a ground for termination, *see id.* § 78–3a–407(2), the failure to substantially comply is evidence of failure of parental adjustment, *see id.* § 78–3a–408(5) (Supp.2005), which *is* a ground for termination. *See id.* § 78–3a–407(1)(e).

## FINAL AND APPEALABLE ORDERS

¶ 8 The Utah Rules of Appellate Procedure provide that a party may appeal from "all final orders and judgments." Utah R.App. P. 3(a). "We determine whether an order is final as a matter of law." *In re B.B.,* 2002 UT App 82, ¶ 4, 45 P.3d 527, *aff'd,* 2004 UT 39, 94 P.3d 252. But "[i]n child welfare proceedings, unlike traditional civil cases, appeals may be heard from more than one final judgment." *In re S.A.K.,* 2003 UT App 87, ¶ 13, 67 P.3d 1037. Nevertheless,

> [t]he finality of an order in juvenile proceedings is determined in a manner similar to judgments and orders in other matters. A final, appealable order is one that ends the current juvenile proceedings, leaving no question open for further judicial action. An order which does not completely determine the rights of the parties ... is merely interlocutory in nature.

*In re H.J.,* 1999 UT App 238, ¶ 27, 986 P.2d 115 (alteration and omission in original) (quotations and citation omitted).

¶ 9 Thus, the determination of whether a permanency order is final and appeal-able requires pragmatic analysis of the order itself. Indeed, it is the substance, not the form, of the permanency order that matters in our analysis because the determination whether an order is final and appealable turns on the "substance and effect" of the order. *Cahoon v. Cahoon,* 641 P.2d 140, 142 (Utah 1982). *See also Harris v. IES Assocs., Inc.,* 2003 UT App 112, ¶ 56, 69 P.3d 297 ("The Utah Supreme Court has recognized that an order is final where 'the effect of the order ... was to determine substantial rights ... and to terminate finally the litigation' ....") (quoting *Cahoon,* 641 P.2d at 142) (first and second omissions in original). So naturally, because we focus on the substance of the order, and because permanency orders may contain a vast array of pronouncements, the occasional permanency order will in fact be final and appealable.[1]

¶ 10 Some permanency orders end the case as a practical matter and, thus, are clearly final and appealable. Examples of such orders might include orders terminating jurisdiction, *cf. In re M.C.,* 916 P.2d 914, 916–17 (Utah Ct.App.1996); orders converting temporary custody in the State or some other individual into permanent custody, *see In re H.J.,* 1999 UT App 238, ¶ 26, 986 P.2d 115; or orders that otherwise relieve a party from further litigation. Other types of permanency orders—e.g., orders merely continuing jurisdiction of the juvenile court, *see* Utah Code Ann. § 78–3a–312(4)(d) (Supp. 2005); orders giving only temporary custody to the State or an individual, *cf. In re M.V.,* 937 P.2d 1049, 1050–51 (Utah Ct.App.1997); and orders that otherwise leave parental status unresolved—anticipate further judicial action and determination of rights, and thus,

---

1. There are a wide array of orders that are referred to as "permanency orders." We suggest that all involved could benefit from the use of more descriptive titles, and we encourage the juvenile courts to utilize descriptive language when captioning orders resulting from permanency hearings.

 Mother also points to the fact that the juvenile court advised her that "this is an appealable decision and her counsel must remain during the time frame for appeal." Clearly, such a comment has no effect on whether the decision is indeed appealable—although it is a further indication of the widespread confusion on this sub-ject—and thus, juvenile courts must take great care to avoid leaving the parties with the impression that a decision is final and appealable when, in fact, it is not. Of the many orders in the life of a juvenile court proceeding, there will be several along the way that are not final and appealable. Thus, juvenile courts must be very cautious in advising the parties before them and should not include, as an unconsidered boilerplate phrase, language informing a party that an order is appealable. Instead, if there is any question, the direction to the parties should be that the decision *"may* be appealable," whether as a matter of right or otherwise.

are interlocutory in nature and cannot be appealed as a matter of right.[2] We conclude that the instant permanency order is clearly of the latter type of permanency order because its two actions—discontinuing reunification services and changing Child's permanency goal to adoption—leave "question[s] open for further judicial action" and "do[ ] not completely determine" Mother's rights. *In re H.J.*, 1999 UT App 238 at ¶ 27, 986 P.2d 115 (quotations and citation omitted).

¶ 11 The only action of the instant permanency order that is arguably "final" is the permanent termination of reunification services. This action is not one within the juvenile court's discretion and is required by statute if the child is not returned to the parent at the permanency hearing. *See* Utah Code Ann. § 78–3a–312(4)(a) (Supp. 2005). But, as discussed above, the efforts provided by the State under the plan and parental compliance with the plan will ordinarily both be addressed during the termination proceedings. Therefore, these two issues may be reached through an appeal of the termination decision. *Cf. In re S.A.K.*, 2003 UT App 87 at ¶ 14, 67 P.3d 1037 (reasoning that since findings from an adjudication hearing "provide the basis for determining the consequences in the disposition hearing," an appeal from the latter "should be sufficient to allege errors occurring in the adjudication proceedings").[3]

¶ 12 The permanency order in the instant case also set a final plan of adoption for Child. This, too, fails to qualify as final and appealable. While the resulting permanency plan is, in name, characterized as "final," it clearly necessitates proceedings for the termination of parental rights if there is no

immediate parental consent to adoption. In fact, as discussed above, the statute requires that the termination petition be filed and the pretrial be held within forty-five days of the permanency hearing. *See* Utah Code Ann. § 78–3a–312(5). Indeed, while termed a "final plan," the plan simply sets a direction for further proceedings and is by no means immune to change. "Although it may be a difficult feat to accomplish, the parent may still be able to change circumstances such that when the petition is tried, the juvenile court will not find by clear and convincing evidence grounds for terminating parental rights." *In re J.N.*, 960 P.2d 403, 408 n. 8 (Utah Ct.App.1998). Thus, setting a final plan of adoption does not "completely determine" Mother's rights. *In re H.J.*, 1999 UT App 238 at ¶ 27, 986 P.2d 115 (quotations and citation omitted).

## MOOTNESS

■ ¶ 13 The State argues that we should not decide the jurisdictional question because Mother's parental rights have since been terminated, she did not appeal the termination order, and, therefore, the issue is moot. Although we agree that this case is technically moot, we may nevertheless address this issue under the well-settled exception to the mootness doctrine that allows us to review "an issue of public import that is likely to recur and is *capable* of evading judicial review." *In re N.R.*, 967 P.2d 951, 953 (Utah Ct.App. 1998) (emphasis added).

¶ 14 The issue of whether a permanency order terminating reunification services and setting a final permanency plan of adoption is a final, appealable order is clearly a matter of

---

**2.** Petitions for leave to file an interlocutory appeal or for extraordinary writs, perhaps coupled with requests for expedited review, will be available in the rare case when appellate intervention is appropriate even though an order is not appealable as a matter of right. *See generally* Utah R.App. P. 5 (appeals from interlocutory orders); Utah R.App. P. 19 (extraordinary writs); Utah R. Civ. P. 65B (extraordinary relief); Utah R.App. P. 31 (expedited appeals).

**3.** "[T]he Child Welfare Act [is] designed to protect children by ensuring that they are not in legal limbo for an unwarranted time period." *In re J.N.*, 960 P.2d 403, 407–08 (Utah Ct.App.

1998). Our decision here is in harmony with the Legislature's intent to quickly move child welfare cases through the many stages towards permanency. *See* Utah Code Ann. § 78–3a–311(3)(a) (Supp.2005) (noting the State's "interest in and responsibility to protect and provide permanency for minors who are abused, neglected, or dependent"). Although there may be multiple appealable orders in the life of a child welfare case, *see In re E.M.*, 922 P.2d 1282, 1284 & n. 1 (Utah Ct.App.1996), it would be a "procedural nightmare" if *all* interim orders along the way were appealable. *In re H.J.*, 1999 UT App 238, ¶ 30, 986 P.2d 115.

public import that is likely to recur. There has previously been confusion on the issue,[4] and both the State and Guardians ad Litem agree in their briefs that practitioners need clarification as to whether such an order is final.

¶ 15 And because of the timing of parental termination proceedings, cases such as the instant one are surely "capable of evading judicial review." *Id.* The Utah Code directs that after a permanency order setting adoption as the final plan for a child, "the petition for termination of parental rights shall be filed, and a pretrial held, within 45 calendar days after the permanency hearing." Utah Code Ann. § 78–3a–312(5). The accompanying trial usually follows quite expeditiously. Thus, this issue is likely to evade our review because it is unlikely that an appellate court could receive an appeal, consider a case, and issue an opinion before the termination proceeding renders the case moot.

■■■ ¶ 16 Further, if the only possibilities of review are avenues of discretionary review, then by definition such situations are *capable* of evading review, even though they are not *assured* of evading review. In these situations, review is completely at the appellate court's discretion and the case may very well never receive judicial review. Therefore, whether the issue is "*capable* of evading judicial review," *In re N.R.*, 967 P.2d at 953 (emphasis added), mostly turns on whether an appeal as of right is available, rather than discretionary avenues of review, which necessarily invite speculation as to whether review will actually occur.[5] Moreover, even if this or a similar case were granted discretionary

review, it is also speculative whether the court would directly address the jurisdictional issue, and therefore, we may appropriately address the issue here.

### CONCLUSION

■■■ ¶ 17 Although technically moot, the instant case is "an issue of public import that is likely to recur and is capable of evading judicial review." *In re N.R.*, 967 P.2d at 953. We therefore reach the jurisdictional issue and determine that a permanency order which terminates reunification services and sets a final permanency plan of adoption is not a final, appealable order. We therefore dismiss for lack of jurisdiction.

¶ 18 I CONCUR: JUDITH M. BILLINGS, Judge.

¶ 19 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Presiding Judge.

4. Previously, cases with procedurally similar backgrounds may have been addressed on the merits by this court, with the court assuming jurisdiction over the matters. The instant case, however, is the first wherein the court has focused on the jurisdictional question and has had the benefit of full briefing addressing the issue. We therefore disavow any decisions seemingly inconsistent with our jurisdictional analysis here.

5. The State, citing to *In re S.K.*, 1999 UT App 261, 987 P.2d 616, argues that this is not a case "capable of evading judicial review," *In re N.R.*, 967 P.2d 951, 953 (Utah Ct.App.1998), because Mother could have petitioned for extraordinary relief under rule 65B. *See* Utah R. Civ. P. 65B. But the instant case is distinguishable because the juvenile court in *S.K.* acted against an explic-

it statutory mandate. *See* 1999 UT App 261 at ¶ 10, 987 P.2d 616. In *S.K.*, the juvenile court had determined at the permanency hearing to extend reunification services for the parent, *see id.* at ¶ 7, clearly violating the statute's instructions that services could not be extended beyond twelve months. *See id.* at ¶ 10. But the error complained of in the instant case is not the same "failure to follow the statute's clear mandate." *Id.* If it were, "[g]iven the mandatory dictates of the permanency hearing statute," rule 65B would provide a more clear avenue for review. *Id.* at ¶ 12. Instead, the instant case does not present a clear violation of the statute, and thus, the likelihood of discretionary review is *much* less certain.