**2024 UT App 106**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF R.P.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

K.J.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20230363-CA
Filed August 1, 2024

Fourth District Juvenile Court, American Fork Department
The Honorable Douglas Nielsen
No. 1202510

Emily Adams, Attorney for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce and Heath Haacke,
Guardians ad Litem

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and AMY J. OLIVER
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     R.P. (Child) was adjudicated as neglected as to her mother, K.J. (Mother). Later, on the State of Utah's motion and over Mother's objection, the juvenile court ordered Child's biological father (Father) to submit to genetic testing to establish his paternity. Thereafter, based upon the test results, the court entered an order declaring Father as Child's biological father,

granting Father's motion to intervene in the proceeding, and denying Mother's motion to disregard genetic testing. Mother did not appeal from this order. Instead, Mother now appeals from a subsequent adjudication order determining that Child was not abused, neglected, or dependent as to Father. However, her appeal does not dispute the court's adjudication order but rather asserts that the court erred in recognizing Father's paternity. We dismiss this appeal for lack of jurisdiction as Mother failed to file a timely notice of appeal following the entry of the court's earlier order declaring Father's paternity of Child.

## BACKGROUND

¶2     Child was born in 2016. At the time of Child's birth, Mother's then-boyfriend, M.P. (Declared Father), who was incarcerated, executed a voluntary declaration of paternity (the VDP) and was listed on Child's birth certificate as her father. Declared Father died when Child was a little over a year old. Mother then married another man, N.H., who has parented Child since then. Child and her siblings were removed from Mother and N.H.'s home in September 2021 based upon allegations of abuse, neglect, and dependency. The juvenile court adjudicated Child's neglected status as to Mother a month later. In December, before he and Mother were due in court for a hearing, N.H. contacted Father asking for his help. According to Father, it was at this point that he became aware of his potential paternity.[1]

¶3     Both Father and the State sought an order from the juvenile court for genetic testing, and Father moved to intervene in Child's case. Mother opposed any genetic testing for

---

1. Mother disputes this. Mother alleges that Father knew he might be Child's biological father as early as 2016, when she was pregnant with Child.

Father, arguing that Declared Father was Child's father and though Declared Father had passed away, Father did not have a statutory right to file for genetic testing. The State and Child's Guardian ad Litem (the GAL) argued for allowing the genetic testing of Father, asserting it was proper under the law and in Child's best interest.

¶4 The juvenile court ordered genetic testing for Father and Child, which revealed that Father was indeed Child's biological father. Father then asked the court to formally recognize him as Child's biological father. Mother objected and moved the juvenile court to disregard the results of the paternity test. Mother argued that under Utah Code section 78B-15-608(2), it would be in Child's best interest to disregard the genetic test results because "[i]t would be an absolute detriment to now introduce [Child] to [Father]." Father responded that because Child did not have a father-child relationship with Declared Father, Utah law required that as the biological father of Child, he must be adjudicated as her father. *See* Utah Code § 78B-15-617. Specifically, Father argued that the law relied on by Mother was inapplicable because Declared Father was deceased and there was no parent-child relationship between him and Child to disrupt. Moreover, Father asserted, even if the law relied on by Mother was applicable, analyzing the case based on the factors set forth in section 78B-15-608(2) showed that disregarding the genetic test results would not be in Child's best interest.

¶5 The parties appeared before the juvenile court in December 2022. At that hearing, the court declared Father's paternity as to Child, granted Father's intervention motion, and denied Mother's motion to disregard the genetic testing. An order prepared by the State was signed by the court on December 14, 2022, and a formal order prepared by Father's counsel reflecting these rulings was approved and entered on January 14, 2023. Mother did not appeal from either order.

¶6      The parties returned to the juvenile court on January 23, 2023. At this hearing,[2] the court adjudicated Child as to Father in connection with an amended child welfare petition alleging abuse, neglect, and dependency (amended by interlineation to include Father as the "natural father" of Child). Father affirmatively admitted that he was Child's biological father, but pursuant to rule 34(e) of the Utah Rules of Juvenile Procedure, he neither admitted nor denied the remaining paragraphs of the amended petition. The court then entered "no finding" as to him.[3]

---

2. The juvenile court characterized this hearing as a permanency hearing for Mother and N.H. and as a pretrial hearing for Father. The court issued two separate orders from this hearing: a Permanency Order entered on March 27, 2023, and Father's Adjudication, Findings of Fact, Conclusions of Law, and Order, on April 24, 2023.

3. Because "[i]t is in the best interest and welfare of a child to be raised under the care and supervision of [a] child's natural parents," the State may intervene in a constitutionally protected family unit only when a "parent is unable or unwilling to render safe and proper parental care and protection." Utah Code § 80-2a-201(1)(c), (2). The State can take action for the welfare and protection of a child by filing a child welfare petition alleging that a child is abused, neglected, or dependent. *See id.* §§ 80-2a-201(2), 80-3-201. The juvenile court adjudicates the status of the child by examining whether the allegations contained in the petition are true. *Id.* § 80-3-402(1). There is only one determination to be made by the juvenile court when it adjudicates a petition: has the State proved by clear and convincing evidence that the child is abused, neglected, or dependent as to the parent? If yes, the court proceeds to disposition. *Id.* § 80-3-405. If no, and the parental presumption is thus restored, the child must be returned to the custody of the parent. Here, the juvenile court's "no finding"

(continued…)

At the hearing, the court returned custody of Child to Mother but recognized that therapeutic intervention with Father was required before it could award him custody of Child. The court entered Father's adjudication order on April 24, 2023. Mother filed her notice of appeal on April 26, 2023, challenging the juvenile court's recognition of Father's paternity.

## ISSUE AND STANDARD OF REVIEW

¶7     On appeal, Mother argues that the court erred in its application of the paternity statute and that a declaration of Father's paternity more than six years after Declared Father filed the VDP was time-barred under the applicable statute of limitations. In response, the GAL argues that this court should not reach the issues Mother raises on appeal because the juvenile court's January 2023 order was final and appealable and Mother's appellate challenge to the court's declaration of Father's paternity is therefore untimely. Accordingly, before reaching the merits of Mother's arguments, we must first determine whether we have jurisdiction to rule on her challenges. "Whether subject matter jurisdiction exists is a threshold issue that we must resolve before we may address [an] appellant's substantive issues." *In re K.F.*, 2009 UT 4, ¶ 21, 201 P.3d 985; *see also State v. Brown*, 2021 UT 11, ¶ 10, 489 P.3d 152 ("Jurisdiction is the blood in our judicial system. Because of its vitalness, we have an independent obligation to ensure that we have it over all matters before us." (quotation simplified)). "Questions about appellate jurisdiction are questions of law that, by definition, arise for the first time in the appellate

---

necessarily meant that Child had to be returned to the custody of the parent, because without a finding of parental unfitness due to abuse, neglect, or dependency, the juvenile court does not have jurisdiction to continue to make decisions regarding a child's welfare. *See In re Z.D.*, 2006 UT 54, ¶ 57, 147 P.3d 401 (Wilkins, J., concurring).

setting." *In re J.E.*, 2023 UT App 3, ¶ 15, 524 P.3d 1009 (quotation simplified); *see also Zion Village Resort LLC v. Pro Curb U.S.A. LLC*, 2020 UT App 167, ¶ 21, 480 P.3d 1055. In addition, appellate courts determine whether a court order is final as a matter of law. *In re B.B.*, 2002 UT App 82, ¶ 4, 45 P.3d 527, *aff'd*, 2004 UT 39, 94 P.3d 252. Because we agree that we lack jurisdiction in this case, we do not reach the issues Mother raises in her appeal.

## ANALYSIS

¶8 Mother appeals from Father's adjudication order. This court has original jurisdiction over appeals from the juvenile court, *see* Utah Code § 78A-4-103(3)(c), and our rules of appellate procedure provide that a party may appeal "a final order or judgment," Utah R. App. P. 3(a)(1). A notice of appeal in a child welfare case must be filed within fifteen days after the entry of the operative court order. *See* Utah Code § 78A-6-359(2); *see also* Utah R. App. P. 52(a). If an appeal is not timely filed, this court lacks jurisdiction over the issues raised. *See In re adoption of A.B.*, 2010 UT 55, ¶ 25, 245 P.3d 711 ("Utah appellate courts lack jurisdiction over an appeal . . . if the notice of appeal is not filed in strict compliance with Utah's notice of appeal requirements.").

¶9 Generally, "a judgment is final when it ends the controversy between the parties." *Bradbury v. Valencia*, 2000 UT 50, ¶ 9, 5 P.3d 649 (quotation simplified). And "the finality of an order in juvenile proceedings is determined the same way as the finality of an order in other courts." *In re S.M.*, 2007 UT 21, ¶ 18, 154 P.3d 835 (quotation simplified). But Utah's appellate courts have determined that "in child welfare proceedings, unlike traditional civil cases, appeals may be heard from more than one final judgment." *In re A.C.M.*, 2009 UT 30, ¶ 10, 221 P.3d 185 (quotation simplified). "This difference does not stem from a different application of or exception to the final judgment rule, but rather

from the unique nature of juvenile court jurisdiction, which often continues after a final judgment is rendered." *Id.*

¶10    As described above, the juvenile court entered an order on January 14, 2023, declaring Father's paternity as to Child, granting Father's intervention motion, and denying Mother's motion to disregard genetic testing. Several months later—on April 24, 2023—the court entered an adjudication order for Father. The GAL asserts that the court's January order was a final order requiring its own notice of appeal, and that, consequently, Mother's challenge to the juvenile court's declaration of Father's paternity from an appeal of Father's adjudication order is untimely. Both Mother and the State assert that the court's January order was merely an order granting Father's intervention and was therefore interlocutory in nature and not immediately appealable as of right.[4] As a result, they continue, Father's April adjudication order was the only final order in this case from which Mother could take an appeal. *See In re K.J.*, 2024 UT App 47, ¶ 53, 548 P.3d 886 (concluding that to properly appeal a temporary order, the party wishing to challenge that order must wait until the court has entered a final appealable order), *cert. denied*, May 31, 2024 (No. 20240578). Thus, the question before us is whether the court's January parentage order was final and appealable.

---

4. Mother and the State are correct that an order granting an intervention motion is not a final order. "[A]n order *denying* a motion to intervene is a final disposition of the claims asserted by the applicant for intervention and is appealable." *Millard County v. Utah State Tax Comm'n*, 823 P.2d 459, 461 (Utah 1991) (emphasis added). "In contrast, the *grant* of a motion to intervene is an interlocutory order that is not appealable as a matter of right." *Berg v. Nelson*, 2016 UT App 16, ¶ 2, 366 P.3d 860 (emphasis added).

¶11   A starting point for our analysis of whether a juvenile court's order is final is this court's decision in *In re A.F.*, 2006 UT App 200, 138 P.3d 65, *aff'd*, 2007 UT 69, 167 P.3d 1070. There, this court stated that "the determination of whether [an] . . . order is final and appealable requires pragmatic analysis of the order itself." *Id.* ¶ 9. "Whether an order is final and appealable turns on the substance and effect of the order." *Id.* (quotation simplified). When the effect of an order is "to immediately implement a change in the permanent status of the [child] and . . . require[s] no further judicial action to be final," the action before the lower court has concluded and the order may be appealed. *In re A.F.*, 2007 UT 69, ¶ 6. Our supreme court has held, for example, that "termination of parental rights is final and appealable because it constitutes a change in the child's status in that it changes the child's legal relationship with his or her parents." *Id.* ¶ 3. Accordingly, "the determining factor in deciding" which orders in a child welfare case are final and appealable as a matter of right is whether the order "effects a change in the permanent status of the child." *Id.* An order that does not effect a change in a child's permanent status and serves "only as an interim determination made in anticipation of additional proceedings" is not final and appealable. *Id.* ¶ 4; *see also In re A.T.*, 2015 UT 41, ¶ 13, 353 P.3d 131 (applying the test for finality); *In re K.F.*, 2009 UT 4, ¶¶ 37–42, 201 P.3d 985 (same).

¶12   Applying these principles to the facts of this case, we agree with the GAL that the January order declaring Father's paternity permanently affected and altered Child's status as to her biological father. Although Mother casts the order as only granting Father's motion to intervene, the actual issue decided by the court was Father's paternity. That determination brought him into Child's case, effectuating a permanent change in Child's status. Now, both Child and Father have constitutionally protectable interests in their parent-child relationship. There was no further action that needed to be taken by the court to recognize

Father's paternity. Father is Child's legal father from now on. That the court later held a hearing to make factual determinations on the allegations contained in the underlying child welfare petition and to assess Father's parental fitness in relation to Child did not mean that the court's January order was not a final, legal determination that altered Child's status as to Father. Accordingly, to challenge the juvenile court's paternity declaration, Mother was required to timely appeal from the January parentage order. And because she did not timely appeal that order, we do not have jurisdiction to address her arguments on appeal.

CONCLUSION

¶13 The juvenile court's January order declaring Father's paternity of Child was a final, appealable order. To challenge the merits of the court's paternity determination, Mother was required to file a notice of appeal within fifteen days from the entry of that order. Because she failed to do so, we dismiss this appeal for lack of jurisdiction.

_____