**2024 UT App 165**

## THE UTAH COURT OF APPEALS

IN THE MATTER OF THE ADOPTION OF K.R.S.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

C.R.S.,
Appellant,
*v.*
M.L. AND G.L.,
Appellees.

Opinion
No. 20230712-CA
Filed November 15, 2024

Sixth District Court, Manti Department
The Honorable Marvin D. Bagley
No. 222600005

Jason B. Richards and Alexandra Mareschal,
Attorneys for Appellant

Mark R. Nelson and Jessica Griffin Anderson,
Attorneys for Appellees

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and
AMY J. OLIVER concurred.

HARRIS, Judge:

¶1     Orders terminating a parent's rights are—when entered by a juvenile court—generally held to be immediately appealable as of right. The question presented in this case is whether parental termination orders are immediately appealable as of right when they are entered by a district court in the context of an adoption proceeding, even if the court has not yet disposed of the underlying adoption petition. We hold that they are not, and that we therefore do not have jurisdiction—at this time and in this

procedural posture—to consider the merits of C.R.S.'s (Father) appellate challenge to the district court's order terminating his parental rights. Accordingly, we dismiss Father's appeal.

BACKGROUND

¶2     Father is the biological father of K.R.S. (Child), who was born in January 2019. For a time, Father cohabited with Child's mother, M.L. (Mother), but they never married; in October 2019, Mother married G.L. (Stepfather). Child has resided with Mother since birth, and with Mother and Stepfather since their marriage.

¶3     In 2021, Father filed a paternity action, and he eventually obtained a court order establishing himself as Child's father. Under the terms of the ensuing decree of paternity, Mother was awarded "sole legal custody" and "sole physical custody" of Child, and Father was awarded "less than statutory minimum supervised parent time." However, Father apparently did not fully exercise his parent-time rights; indeed, the district court in this case found that "Child has never been alone with" Father and that Father "made little to no effort to see or to establish a relationship with [Child], seeing [Child] in person only when his family members . . . requested a visit and via a rare video call."

¶4     In November 2022, Stepfather filed a petition for adoption in district court, asking for an order "establishing between" himself and Child "the legal relationships of parent and child." In his petition, Stepfather alleged that he had developed a "strong relationship" with Child and had become a father figure to him. Based on these facts and others, Stepfather asserted that it was in Child's best interest for Stepfather to adopt him. Notice of the pending adoption proceeding was served on Father, who responded by asking for leave to intervene in the proceeding. Stepfather did not oppose Father's request, and the court granted it, thus making Father a party to the adoption proceeding.

¶5      Meanwhile, Stepfather and Mother (collectively, Petitioners) filed a petition to terminate Father's parental rights. They filed this petition in district court in the already-pending adoption action, and not as a separate proceeding. In their termination petition, Petitioners asserted that several statutory grounds existed to justify termination of Father's rights, including abandonment, neglect and abuse, unfitness, and token efforts. In addition, they asserted that it was in Child's best interest to have Father's parental rights terminated.

¶6      At the first hearing after the filing of the termination petition, the court found Father to be indigent, and the court later appointed an attorney from the local public defender's office to represent him. That attorney (Counsel) filed a document entitled "General Denial," which was apparently intended to function as an answer to the termination petition. At a hearing in March 2023, the court set a trial date for July 2023; Father confirmed, on the record, that the date worked for him. Father was also present at another hearing in April 2023; at that hearing, the court scheduled a final pretrial conference to occur on June 7.

¶7      At the June 7 hearing, Counsel appeared, but Father did not. Counsel asked to "withdraw as counsel" in the case because Father had "not [been] engaging with" Counsel. In particular, Counsel reported that he had been sending Father emails—which Counsel believed to be "an effective workable communication path" because he had communicated that way with Father in the past—and that Father had been quite sporadic in responding. In one of the responses Father did send, he indicated to Counsel that he had "hired another attorney," and Counsel reported that, since that email, Father had not answered any of his messages. Counsel lamented that he could "do no good for" Father if Father "does not work with" Counsel.

¶8      After considering Counsel's request, the court scheduled another pretrial conference in two weeks, and it ordered Counsel

to send Father an email "telling [Father] he ha[d] to be" at the hearing in two weeks or else "he risk[ed] losing the case." The court also instructed its clerk to send independent notice of the hearing to Father, including a warning that, if Father "[did] not show up in person" at the hearing, "he risk[ed] having default entered against him." The clerk did indeed send such a notice. And so did Counsel—his email to Father gave the date and time of the hearing and stated, "If you do not appear IN PERSON [at the hearing] the judge may ENTER DEFAULT JUDGMENT AGAINST YOU." Father responded to Counsel's email by asking "when is court," and Counsel again provided the date and time.

¶9 At the hearing two weeks later, Father did not appear. Counsel renewed his motion to withdraw. After hearing argument from both sides, the court granted Counsel's motion. In addition, it found that Father either knew about the hearing or was "intentionally preventing himself from knowing," and that he nevertheless chose not to attend. The court stated that, as a consequence, it was "going to enter default" against Father.

¶10 In the ensuing weeks, Petitioners submitted a proposed order of termination, accompanied by additional documentation, including an affidavit from Mother setting forth facts supporting the request. Father was served with a copy of these documents. Eventually, after Father did not appear or object, the district court entered an order of termination, including findings of fact and conclusions of law.

¶11 In the order, the court found that Child had "never been alone with" Father, that Father had "gone months at a time without contact with" Child, and that Father had "made little to no effort to see or to establish a relationship with Child." The court also found that Father had "made little effort to financially support" Child. In addition, the court recited Father's "extensive criminal record," his "history of habitual and excessive drug and alcohol use," and his "history of violent and erratic behavior."

Based on these findings, the court concluded that several statutory grounds for termination were present, including abandonment, neglect, and unfitness, as well as the fact that Father had "made only token efforts to avoid being an unfit parent." Finally, the court concluded that it was strictly necessary and in Child's best interest for Father's rights to be terminated.

¶12 This order, however, resolved only the petition for termination of Father's rights; it did not purport to resolve, and did not resolve, the underlying petition for adoption that Stepfather had filed to open the case.[1]

¶13 A couple of weeks after the court issued its order, Father filed a pro se notice of appeal, stating his intention to "appeal the decision of the court" terminating his rights. He did not ask the district court, pursuant to rule 54(b) of the Utah Rules of Civil Procedure, to certify the challenged order as final. And he has not asked us, pursuant to rule 5 of the Utah Rules of Appellate Procedure, for permission to mount an interlocutory appeal.

ISSUE AND STANDARD OF REVIEW

¶14 In his appeal, Father attempts to challenge the propriety of the district court's order terminating his parental rights. He raises both procedural and substantive objections to the order. But before we engage with the merits of Father's challenges, we must first determine whether we have jurisdiction to entertain his appeal. Because we conclude that we do not, the jurisdictional issue is the only one we address in this opinion. "Whether this court has jurisdiction over an appeal is a question of law that we

---

1. After filing his notice of appeal, Father asked the court to stay the adoption proceedings during the pendency of his appeal, and the court granted that motion. Thus, even now, the adoption proceedings remain pending in district court.

review for correctness." *TKS Co-Pack Mfg., LLC v. Wilson*, 2024 UT App 87, ¶ 32, 552 P.3d 258 (quotation simplified).

ANALYSIS

¶15    The rules governing a party's ability to appeal a district court's order are relatively strict. "As a general rule, an appellate court does not have jurisdiction to consider an appeal [from a district court order] unless the appeal is taken from a final order or judgment that ends the controversy between the litigants." *Copper Hills Custom Homes, LLC v. Countrywide Bank, FSB*, 2018 UT 56, ¶ 10, 428 P.3d 1133 (quotation simplified). This principle is often called the "final judgment rule," *id*. (quotation simplified), and it mandates that, unless an exception applies, parties may only "appeal a final order or judgment," *see* Utah R. App. P. 3(a)(1), that "adjudicates all claims and the rights and liabilities of all parties," *see* Utah R. Civ. P. 54(a); *see also In re Estate of Heater*, 2021 UT 66, ¶ 13, 498 P.3d 883 ("For an appellate court to have jurisdiction, there must be no claims pending below." (quotation simplified)); *Bradbury v. Valencia*, 2000 UT 50, ¶ 10, 5 P.3d 649 ("To be final, the trial court's order or judgment must dispose of all parties and claims to an action.").

¶16    The order Father attempts to challenge here—the order terminating his parental rights—was not a final order, because it did not "dispose of all parties and claims" in the adoption proceeding. *See Bradbury*, 2000 UT 50, ¶ 10. To be sure, the termination order did resolve all of *Father's* claims in the adoption proceeding; he will presumably have no involvement in the litigation that remains, namely, whether to grant Stepfather's petition for adoption. But here, the relevant "action" is the adoption proceeding within which the termination petition was filed, *see id.*, and the challenged termination order simply did not resolve the claims of all parties to that action: Stepfather's adoption petition is part of that "action," and it remains pending.

¶17 Our supreme court has identified three exceptions to the final judgment rule. *See Copper Hills*, 2018 UT 56, ¶ 12. The two most common exceptions—interlocutory appeal pursuant to rule 5 of the Utah Rules of Appellate Procedure, and certification pursuant to rule 54(b) of the Utah Rules of Civil Procedure—are not applicable here. Father did not ask us, within 21 days of the entry of the termination order, for permission to appeal that order. *See* Utah R. App. P. 5(a). And Father does not claim to have yet asked the district court, at any point, to certify the termination order as a final appealable order pursuant to rule 54(b).

¶18 The remaining "exception to the final judgment rule is when the legislature provides a statutory avenue for appealing nonfinal orders." *Copper Hills*, 2018 UT 56, ¶ 13 (quotation simplified). But our supreme court has limited this exception to those "appeals that are *expressly authorized* by statute." *See Mellor v. Wasatch Crest Mutual Ins.*, 2012 UT 24, ¶ 16, 282 P.3d 981 (emphasis added); *see also In re adoption of C.C.*, 2021 UT 20, ¶ 23, 491 P.3d 859 ("Some nonfinal orders may trigger an immediate appeal of right as *expressly authorized* by statute." (quotation simplified) (emphasis added)). Examples of orders that are expressly authorized to be immediately appealed include "an order denying a motion to compel arbitration," Utah Code § 78B-11-129(1)(a), "an order denying bail," *id.* § 77-18a-1(1)(d), "an order granting a new trial" in a criminal case, *id.* § 77-18a-1(3)(f), and an order denying a "special motion for expedited relief" filed pursuant to section 78B-25-103 of the Utah Code, *id.* §§ 78B-25-103, 109. In each case, a statute expressly authorizes immediate appeal. *See id.* § 78B-11-129(1) (stating that "[a]n appeal may be taken from" the enumerated orders); *id.* § 77-18a-1(1) (stating that "[a] defendant may, as a matter of right, appeal from" the enumerated orders); *id.* § 77-18a-1(3) (stating that "[t]he prosecution may, as a matter of right, appeal from" the enumerated orders); *id.* § 78B-25-109(1) (stating that "[a] moving party may appeal as a matter of right from" the identified order).

¶19 Here, Father argues that a statutory exception to the final judgment rule can be found in section 78B-6-133(7) of the Utah Code. That section provides that certain "limitations on contesting an adoption," as described in subsections (a) and (b) of the section, "do not prohibit a timely appeal of . . . a decision in an action challenging an adoption." *Id.* § 78B-6-133(7)(d). But here, no party contends that the specific limitations set out in subsections (a) and (b) prevent Father from—eventually—filing an appeal from the termination order once the adoption petition is adjudicated. Indeed, no party contends that *anything* prevents Father from, at some point, appealing the termination order. The question presented is whether section 133(7) creates a statutory exception to the final judgment rule, and we conclude that it does not. Nothing in that statute purports to address the *immediacy* of any appeal, or whether there exists a right to appeal "a decision in an action challenging an adoption" at a point prior to the completion of the entire action. Because our supreme court requires that statutory exceptions to the final judgment rule be *express*, and because no language in section 133(7) speaks of an immediate appeal as of right, we reject Father's assertion that the identified statute contains an express exception to the well-established final judgment rule.

¶20 Next, Father directs our attention to the statute discussing district courts' concurrent jurisdiction (with juvenile courts) over termination of parental rights proceedings. *See id.* § 78B-6-112. That section makes clear that district courts have jurisdiction to entertain petitions to terminate a parent's rights, but only if the party that filed the petition is "seeking to terminate parental rights . . . for the purpose of facilitating the adoption of the child." *Id.* § 78B-6-112(1). And that statute instructs district courts that—in cases where a petition for adoption is pending in the same case as a petition for termination of parental rights—they "may enter a *final* order terminating parental rights before a final decree of adoption is entered." *Id.* § 78B-6-112(3) (emphasis added). Father emphasizes the word "final" as modifying "order terminating

parental rights," and he infers therefrom legislative intent to create a statutory exception to the final judgment rule for "orders terminating parental rights" in district court cases.

¶21 But in our view, no such exception is "express" enough on the face of that statutory provision. As noted, our supreme court requires that any such exception be "expressly authorized." *See Mellor*, 2012 UT 24, ¶ 16. And when our legislature wants to create a statutory exception to the final judgment rule, it knows how to do so plainly. *See supra* ¶ 18. Section 112(3) does not contain the same sort of language our legislature typically uses when it intends to create an express statutory exception to the final judgment rule. And here, the words "final order" do not necessarily connote immediate appealability; rather, the provision may just be an indication of district court discretion to decide the termination issues, in a way that the affected parent can no longer contest, before adjudicating the underlying adoption petition. Given our supreme court's requirement that statutory exceptions be expressly authorized, and given the far more express language of existing statutory exceptions, we are simply unwilling—in the absence of clearer legislative intent—to read section 112(3) as an exception to the final judgment rule.[2]

¶22 Thus, under the law applicable to the finality of orders and judgments rendered in district court proceedings, we have no jurisdiction over this appeal. Under those standards, the order terminating Father's rights is a nonfinal order, and none of the established exceptions to the final judgment rule apply. In such

---

2. To the extent that we misperceive legislative intent on this point, we note that our legislature is of course free to clarify the issue, either by inserting more express language into section 112(3), or by listing, in one of the other existing statutory lists, *see supra* ¶ 18, "parental rights termination orders issued by a district court" as one of the ordinarily nonfinal orders that may be immediately appealed as of right.

situations, our only recourse is to dismiss the appeal. *See Hillam v. Hillam*, 2022 UT App 24, ¶ 25, 507 P.3d 380 (stating that when we do not have jurisdiction, "we cannot fabricate the power to hear a case" (quotation simplified)); *NPEC, LLC v. Miller*, 2019 UT App 175, ¶ 8, 453 P.3d 654 (per curiam) (stating that when we "lack[] appellate jurisdiction," we "must dismiss the appeal").

¶23    Father resists this conclusion by inviting us to apply—in this district court appeal—the appellate finality standards applicable in *juvenile* court appeals. In those cases, appeals as of right "may be heard from more than one final judgment" in the same case, and therefore appellate finality is determined not by strict adherence to the final judgment rule but, instead, by a "pragmatic analysis" of the challenged order. *See In re A.F.*, 2006 UT App 200, ¶¶ 8–9, 138 P.3d 65 (quotation simplified), *aff'd*, 2007 UT 69, 167 P.3d 1070; *see also In re J.E.*, 2023 UT App 3, ¶ 19, 524 P.3d 1009 ("[I]t is fair to say that, in appeals from juvenile court, finality is viewed somewhat more flexibly than in the district court context."). In district court, the touchstone for appellate finality is whether the challenged order "dispose[s] of all parties and claims to an action." *See Bradbury*, 2000 UT 50, ¶ 10. In juvenile court, by contrast, "the determining factor in deciding if an order is final and appealable is whether it effects a change in the permanent status of the child." *In re K.F.*, 2009 UT 4, ¶ 36, 201 P.3d 985 (quotation simplified).

¶24    Applying this more flexible and pragmatic approach, our supreme court has determined that orders terminating a parent's rights that are entered by a juvenile court are final and immediately appealable. *See, e.g., In re A.F.*, 2007 UT 69, ¶ 3, 167 P.3d 1070 (stating, in a juvenile court case, that an order of "termination of parental rights is final and appealable because it constitutes a change in the child's status in that it changes the child's legal relationship with his or her parents"). Father directs our attention to this case law, and he asserts that the same rule

applicable to termination orders issued by *juvenile* courts should also be applicable to termination orders issued by *district* courts.

¶25 Father's position makes sound logical sense. Indeed, not even Petitioners offer any good policy reason why the appellate finality of parental termination orders should differ depending on whether the order was issued by a juvenile court or a district court. As Father points out, once a parent's rights are terminated by a district court in an adoption case, that parent no longer has access to the court file, and may therefore have a hard time even finding out when the right to appeal springs into being (when the adoption petition is adjudicated). And Father also notes that, even in district court, termination petitions can (but need not) be filed as a separate proceeding "before or after" an adoption petition is filed. *See* Utah Code § 78B-6-112(2)(b). He observes that, in such situations, resolution of the termination petition may well resolve all claims by all parties to that separate proceeding and that the order resolving the petition may therefore be final, and he posits that the statutory scheme thus puts some measure of control over the appellate finality of a termination order in the hands of the party filing the termination petition.

¶26 In our view, Father raises solid policy arguments. Father's problem, though, is that we are not policymakers. *See In re A.G.*, 2022 UT App 126, ¶ 24, 522 P.3d 31 ("We, as judges, are not policymakers, and . . . when interpreting statutes it is not our task to weigh competing policy considerations." (quotation simplified)). As we understand the law, the final judgment rule controls appellate finality in district court, subject to established exceptions. And our legislature has not yet seen fit to make "termination orders issued by a district court" one of the identified statutory exceptions.

¶27 Our view of the situation is bolstered by our examination of two relatively recent cases from our supreme court. In *In re adoption of C.C.*, a putative father asked to intervene in a district

court adoption proceeding, asserting that he was the "presumed" father because he had been in a marriage relationship with the child's mother and the child had been born "within 300 days after" the termination of that relationship. 2021 UT 20, ¶ 12, 491 P.3d 859 (quotation simplified). The motion to intervene was granted, making the putative father "a full-fledged party to the proceeding in every respect." *Id*. ¶¶ 13, 27. The prospective adoptive parents then filed a summary judgment motion, "asking the court to conclude as a matter of law that [the putative father] could not qualify as the presumed father" under applicable law. *Id*. ¶ 13. The court eventually granted that motion, concluding that the putative father was not the "presumed father" as a matter of law, and entering an order "dismissing him" from the case. *Id.* ¶ 14. At the time the court entered that order, it had not yet adjudicated the putative adoptive parents' petition for adoption. *Id.* ¶ 15. The issue was thus presented to our supreme court as to whether the district court's order dismissing the putative father from the case was a final appealable order. *Id.* ¶ 19.

¶28    Our supreme court held that it was not. Citing rule 54(a), the court noted that the order—because it did not resolve the adoption petition—did not "adjudicate[] all claims and the rights and liabilities of all parties" to the proceeding and was therefore not a final order subject to immediate appeal as of right. *Id.* ¶ 21 (quotation simplified). The court then considered whether any "exception" to the final judgment rule might be applicable, and it noted that "[a]n order of parental termination may trigger an immediate appeal of right when entered in the juvenile court." *Id.* ¶ 24. But the court drew a distinction, as concerns appealability of orders, between juvenile court proceedings and district court proceedings, and it stated that the statutes and case law providing for appealability of termination orders issued by a juvenile court "appl[y] only to orders entered in the juvenile court." *Id.*

¶29    In addition, the court noted that the putative father had been allowed to intervene in the case, which allowed him "to

participate as a party" and put him "on equal footing with all other parties." *Id.* ¶ 25. And given that he was "a full-fledged party to the proceeding" and that the order was not a final order, "his subsequent dismissal from the action could not trigger an immediate appeal of right unless the decision was certified for immediate appeal under civil rule 54(b)." *Id.* ¶ 27.

¶30 The other recent case that informs our analysis is *In re Estate of Heater*, 2021 UT 66, 498 P.3d 883. In that case, our supreme court was asked to decide whether to continue to apply a "pragmatic approach to determining finality in probate matters" litigated in district court. *Id.* ¶ 16. The court discussed the final judgment rule ordinarily applicable in district court proceedings, and it observed that some previous Utah appellate decisions supported the notion that the final judgment rule should be relaxed—and a more "pragmatic approach" taken—in probate cases. *Id.* The court emphatically rejected and "disavow[ed]" the earlier case law, stating that these cases "are in conflict with rule 5 of the Utah Rules of Appellate Procedure and rule 54(b) of the Utah Rules of Civil Procedure," which rules the court viewed as "controlling." *Id.* ¶¶ 17, 19. The court took the opportunity to "clarify that a nonfinal order in a probate case may be appealed only through the mechanisms delineated in our civil and appellate rules or statutory exemptions." *Id.* ¶ 19.

¶31 While neither *In re adoption of C.C.* nor *In re Estate of Heater* involved an order terminating a parent's rights, we discern in these two cases a strong signal from our supreme court that the final judgment rule and its heretofore-identified exceptions are to be strictly applied in appeals arising from district court orders, and that judicially created exceptions to the final judgment rule in this context are disfavored. In particular, the court noted that termination orders are appealable in juvenile court, but that the statutes and case law allowing for that were applicable "only to orders entered in the juvenile court." *See In re adoption of C.C.*, 2021 UT 20, ¶ 24. With this guidance in mind, we respectfully decline

Father's invitation to apply juvenile court finality rules in the district court context, or to create a pragmatic or policy-based exception to the final judgment rule for termination orders entered in the context of a district court adoption case.

¶32    Father is not without a potential remedy here, though: he is and remains free to seek rule 54(b) certification from the district court. It is noteworthy that, in the cases we have just discussed, our supreme court suggested this option to litigants frustrated by the strictures of the final judgment rule. *See In re Estate of Heater*, 2021 UT 66, ¶ 19 (stating that the litigant "should have pursued an interlocutory appeal or sought a [rule] 54(b) certification from the district court judge"); *In re adoption of C.C.*, 2021 UT 20, ¶ 29 (noting that "[o]ne or more of the parties could have sought certification under rule 54(b)," and offering its view that, "with the benefit of hindsight, such a course may have been the better option in a case like this one"). Indeed, in *In re adoption of C.C.*, the court stated that, "in future cases" in which a putative father is dismissed from an ongoing adoption case in district court, rule 54(b) "certification may well be appropriate where there is a perceived risk of delay or disruption of the establishment of a child's placement for adoption." 2021 UT 20, ¶ 29.

¶33    We likewise take the opportunity to observe that—unless and until an express statutory exception to the final judgment rule is created in this context, *see supra* note 2—cases like this one might well be prime candidates for rule 54(b) certification. Termination orders in this context will often completely resolve the claims of one party to the action; there will often be little if any "factual overlap" between the termination issues and the remaining adoption issues; and there will often not be any "just reason for delay[ing]" a parent's right to appeal the termination order. *See Hillam*, 2022 UT App 24, ¶¶ 16–18 (quotation simplified); *see also* Utah R. Civ. P. 54(b). We therefore encourage district courts to carefully consider requests for rule 54(b) certification made by

parents whose rights have been terminated in an interlocutory order entered in an adoption case.

CONCLUSION

¶34 Under the standards governing appellate finality in district court proceedings, the district court's interlocutory order terminating Father's parental rights was not a final order, and no statutory exception to the final judgment rule is applicable. And we decline Father's invitation to create a policy-based exception, drawn from the juvenile court context, to the final judgment rule applicable in district court. Accordingly, we lack jurisdiction—at this time and in this procedural posture—to entertain the merits of Father's challenge to the district court's termination order. We therefore dismiss Father's appeal for lack of jurisdiction.

_____